**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02319

JASON WRIGHT,

    Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

    Defendant.

**MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION FOR PRELIMINARY
INJUNCTION**

Plaintiff Jason Wright, by and through his counsel, Eric Maxfield, submits this Memorandum in Support of his Emergency Motion for Preliminary Injunction.

**I. EMERGENCY NATURE OF MOTION**

Judge Domenico's Practice Standard at I.G. provides that a party seeking an expedited decision must identify in the title of the pleading "emergency". This motion is an emergency motion because Mr. Wright must take the USMLE Step 3 test by November 9, 2021 in order to pass all USMLE tests within ten years of sitting for the first USMLE test, as generally required by the Colorado Medical Board Rule 100 for medical licensure. 3 CCR 713-17: 17.2(D)(1), (E), (F). If he does not pass the exam by that deadline he may apply to the Medical Board for an extension, which is subject to the Board's sole discretion, per its Rule 100, whether Mr. Wright demonstrates good cause for exceeding the term. 3 CCR 713-17: 17.2(D)(1), (2). Mr. Wright must take the October 21, and 25, 2021 USMLE Step 3 test with appropriate test

1

accommodations so that he may advance his medical career as a physician. Without appropriate test accommodations on the October 21 and 25, 2021 test and subsequent tests if necessary, providing Mr. Wright with equal footing compared with other test takers, he will experience extreme prejudice and imminent, irreparable harm. Consequently, Mr. Wright seeks an Order from this Court granting his emergency motion to compel the NBME to provide the requested appropriate testing accommodations.

## II. INTRODUCTION

Plaintiff Mr. Wright incorporates by reference his Emergency Motion for Preliminary Injunction as if set forth fully herein. Mr. Wright has brought an action against the Defendant National Board of Medical Examiners (NBME) for violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101, et seq.  Mr. Wright, an individual with disabilities, has requested appropriate testing accommodations when taking the United States Medical Licensing Exam (USMLE) Step 3 test, which is prepared and administered by the NBME. Mr. Wright has disabilities that affect his reading, the speed at which he reads and the processing of information, and he needs the accommodation of 50% extended time, a distraction limited testing environment and extra or extended breaks on the USMLE Step 3 test, in order to best ensure that the results of the USMLE Step 3 test reflect his aptitude or achievement level and not his disability.

Mr. Wright is an intelligent and thoughtful person who has struggled throughout his entire academic career with reading, reading under timed circumstances, and reading comprehension under timed circumstances. Given additional time, a distraction limited environment and extended breaks, he is brought up to par with other test takers, including on tests like the USMLE Step 3. Despite extensive documentation demonstrating his disabilities and

need for accommodation, including comprehensive assessment by Dr. Terri Lucero, Ph.D. and the University of Denver's approval of extra time for testing, the NBME has denied Mr. Wright's repeated requests. The ADA prohibits public accommodations such as the NBME from discriminating against people with disabilities in the administration of examinations such as the USMLE Step 3 test. 42 U.S.C. § 12189.

Without the benefits of the requested accommodations, Mr. Wright will be deprived of the benefit of testing that accurately reflects his abilities and aptitude; he will lose the benefit of extensive preparation and study for the USMLE Step 3 test, he will be denied the opportunity to compete with other medical license applicants on a level playing field. Mr. Wright has already taken the USMLE Step 3 three times without accommodation and failed each of these times due to limitations presented by his disabilities. If Mr. Wright takes the exam on October 21 and 25, 2021 and fails, he will need to petition the Colorado Medical Board to exempt him from a requirement that he complete testing within ten years from his first USMLE sitting. 3 CCR 713-17: 17.2(D)(1), (2).  If the Board denies such petition, Mr. Wright will be forever barred from becoming a physician in Colorado, his home state. If the Board grants the petition, Mr. Wright requires the benefit of testing accommodations on a subsequent test so that he may compete equally with other test takers.

Mr. Wright must take the USMLE Step 3 test on October 21 and 25, 2021, and because of extreme prejudice resulting in irreparable harm that Mr. Wright will suffer if he is not appropriately accommodated on the USMLE Step 3 test, he seeks an order from the Court granting his motion to compel the Defendant NBME to provide the requested accommodations.

**III. STATEMENT OF FACTS**

Mr. Wright has a medical doctorate (M.D.) degree, obtained on March 31, 2014 from Ross

3

University School of Medicine. Mr. Wright's goal is to become a licensed medical doctor in Colorado.

**A. Mr. Wright's History of Disability and Accommodations**

Mr. Wright has, according to licensed neuropsychologist Dr. Terri Lucero, Ph.D., under the Diagnostic Statistical Manual of Mental Disorders, V, Specific Learning Disorder, with Impairment in Reading; Attention Deficit/Hyperactivity Disorder, Inattentive Type, Mild; and Other Specified Depressive Disorder. Ex. 1: 31. Mr. Wright's disorders cause him to have a substantial and significant limitation on his cognitive abilities, resulting in significant impairment in reading, significantly impacting his reading fluency and reading comprehension on timed tasks such as timed tests.  Ex. 1:31.

Dr. Lucero's comprehensive assessment revealed the following key findings regarding Mr. Wright's performance (Ex. 1:29-30):

- His Reading Rate, as measured by the Nelson Denny Reading Test was at the 3rd percentile compared to his peers.
- There was an obvious difference in his performance on untimed reading tasks on the WIAT-4 and timed reading tasks on the WIAT-4 and NDRT, particularly when the reading involved longer passages to answer comprehension questions. Specifically:
    - His performance on the timed WIAT-4 Oral Reading Fluency task was at the 30th percentile, and substantially weaker than his untimed Reading Comprehension performance (75th percentile).
    - On the Nelson-Denny Reading Test, his Reading Comprehension was below average and fell at the 12th percentile when the test was administered with the standard time limit. His performance rose to the average range at the 68th percentile under the

4

Extended Time condition.

• On the WIAT-4 his reading scores were well below what would be expected of someone with superior verbal reasoning skills. His reading accuracy was only at the 25th percentile, indicating he made several mistakes while reading passages. Such mistakes likely lead to decreased efficiency during test taking and possibly a tendency to misunderstand what is being asked of him.

Dr. Lucero is a Colorado licensed clinical psychologist, a Ph.D. and a neuropsychologist. She earned her M.S. and Ph.D. in Clinical Psychology from Auburn University and has been a Colorado licensed psychologist since 1999. She has been providing psychoeducational, psychological, and neuropsychological assessment services for over 20 years. https://peakgifted2e.com/gifted-2e-specialists/terri-lucero-psychologist-denver/ (last visited 9/13/21).

According to Dr. Lucero, Mr. Wright needs accommodations on timed tests in order to fully and equally participate in a way that accurately reflects his skill and knowledge: 1. Extended Time – It is recommended that Dr. Wright be allowed Time and a Half on all portions of testing in order to produce a performance on testing that is commensurate with his cognitive and academic abilities, and his practical skills in medical care. An evaluation of his performance on timed versus untimed reading comprehension tasks (summarized by Dr. Lucero) revealed that he has a reading rate that is substantially below average and that his reading comprehension is consistently compromised under timed conditions. 2. Separate Quiet Environment – Dr. Wright's ADHD, despite treatment with stimulant medication, leaves him susceptible to being distracted by environmental cues and will do best if allowed to take tests in a separate, quiet environment free from typical distractions of the standard classroom or testing setting. 3. Additional, Stop-the-

5

Clock or Extended Breaks – The extra time and effort needed to complete reading tasks can be quite draining and cause fatigue that may further negatively impact Mr. Wright's performance. He would benefit from being allowed to take extra, stop-the-clock or extended breaks during testing. Ex. 1:31-32.

**B. The United States Medical Licensing Exam**

The USMLE is a series of standardized examinations that are relied upon by jurisdictions across the United States in making decisions regarding medical licensure. Together with the Federation of State Medical Boards, NBME sponsors the USMLE program, and it administers the USMLE through a third-party vendor. All three Steps of the USMLE must be passed before an individual with a medical doctor (M.D.) degree is eligible to apply for an unrestricted license to practice medicine in Colorado.

The USMLE Step 3 test is a two-day examination. (https://www.usmle.org/pdfs/step-3/Step3_content.pdf  at p. 3) (site last visited 9/15/2021). The first day of testing includes 232 multiple-choice items. Id. The second day of testing includes 180 multiple-choice items. Id.

The USMLE Step 3 test must be passed in Colorado, according to Colorado Medical Board Regulation 100, within ten years of taking the USMLE Step 1 test, in order to be licensed to practice medicine. 3 CCR 713-17: 17.2(D)(1),(E),(F). Mr. Wright took the USMLE Step 1 test on November 9, 2011, resulting in a deadline of November 9, 2021 to take and pass the USMLE Step 3. The only exception for exceeding the ten-year period is if Mr. Wright demonstrates good cause for exceeding the term, and such exception is granted, in the sole discretion of the Colorado Medical Board. 3 CCR 713-17: 17.2(D)(2).

**C. The Defendant NBME's Denials of Mr. Wright's Request for Testing Accommodation**

After failing the USMLE Step 3 two times, in 2017 Mr. Wright sought assessment of

6

what he perceived to be his difficulty in taking the timed standardized test. He was assessed by Dr. Lucero, and her report and diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD) and Specific Learning Disorder. (Ex. 1:83-84). The NBME determined, through its Disability Assessment analyst Lucia McGeehan, Ph.D., that Mr. Wright did not have a substantial limitation of a major life activity and denied his 2018 request for accommodation. Mr. Wright again took, and for the third time failed, the USMLE Step 3 test.

On March 29, 2021 Mr. Wright provided NBME with documentation of prior approval of testing accommodations of 50% additional time, by the University of Denver. Mr. Wright likewise provided the NBME with documentation, including the updated comprehensive assessment of Dr. Terri Lucero, Ph.D., licensed neuropsychologist, dated January 23, 2021, in support of her diagnoses of Mr. Wright, her opinion of his substantial limitations, and her opinion of his need for testing accommodations. The documentation provided by Plaintiff in support of his request for accommodations is the type of documentation called for by NBME's written accommodation policies. In spite of this provision of demonstrated need for testing accommodations, the NBME denied Mr. Wright's request.

**D. Mr. Wright's Experience Taking the USMLE Step 1, 2, and 3**

Mr. Wright took and passed the USMLE Step 1 on November 9, 2011, without testing accommodations. Mr. Wright took the USMLE Step 2 tests (2) in 2013 and failed the test. He repeated the test in 2013 and passed, without testing accommodations. Mr. Wright took and failed the USMLE Step 3 two times in 2017, without accommodations. Mr. Wright requested testing accommodations, including for extra time on the USMLE Step 3 test, in 2018. Defendant NBME denied Mr. Wright's request. Mr. Wright took and again failed the USMLE Step 3 test in 2019, without accommodations. On March 29, 2021, Mr. Wright again requested testing

accommodations, supported by a personal declaration and an updated comprehensive assessment from Dr. Lucero. Ex. 1:17-32. On July 28, 2021, after a paper review, the NMBE denied the request.

## IV. ARGUMENT

### A. Plaintiff Meets the Standards for Preliminary Injunction.

The Americans with Disabilities Act (ADA) expressly authorizes injunctive relief as an appropriate remedy to acts of discrimination against individuals with disabilities. § 42. U.S.C. § 12188(a)(1). In deciding whether to issue a preliminary injunction under F.R.C.P. 65, a court must determine whether the movant has shown: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). As will be discussed below, Plaintiff Mr. Wright satisfies all four factors.

### B. Plaintiff Is Substantially Likely to Succeed on the Merits.

### 1. Legal Standard

Title III of the ADA requires private entities, like the NBME that administer standardized examinations such as the USMLE Step 3, do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42. U.S.C. § 12189. The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and "to place those with disabilities on equal footing" with others. See, *Rush v. National Board of Medical Examiners*, 268 F.Supp.2d 673, 677 (N.D. Texas 2003); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d 86, 87 (D.Mass. 1999). The regulations implemented in

8

accordance with the ADA provide that an examination is administered to best ensure that, "the examination result accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [disability]" 28 C.F.R. § 36.309(b)(1)(i). See *Enyart v Nat'l. Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1161 (9th Cir. 2011); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 180 (D.D.C. 2011); *Jones v. National Conference of Bar Examiners*, 801 F.Supp.2d 270, FN 5 (D. Vt. 2011). One possible modification to an examination, such as the USMLE Step 3 test, is to "change the length of time permitted for completion of the examination." 29 C.F.R. § 36.309(b)(2). In fact, extended time is an accommodation that the NBME offers to test takers. (see https://www.usmle.org/test-accommodations/requesting-accommodations.html) (site last visited 9/13/2021). Title III of the ADA also prohibits discrimination by testing entities, such as the NBME, on the basis of disability. Such an entity engages in an impermissible act of discrimination when it fails to provide "reasonable accommodations to known physical or mental limitations" in connection with testing. 42 U.S.C. § 12112(b)(5)(A).

**2. Mr. Wright is a Person with Disabilities Under the ADA**

An individual is disabled within the meaning of the ADA if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Mr. Wright's updated comprehensive assessment report of Dr. Terri Lucero, Ph.D. reflects that he has a specific learning disorder, ADHD, and is significantly limited in his ability to read, particularly under timed conditions. Mr. Wright is substantially impaired in the major life activity of reading, reading under timed conditions, cognitive processing speed, and concentration, which individually and collectively impair his ability to take the USMLE Step 3 test under standard timed conditions. Ex. 1:17-32. "Major life

9

activities" includes "learning, reading, concentrating [and] thinking. 28 C.F.R. § 36.105(d)(2)(i). The ADA expressly provides that a disability includes impairments such as specific learning disabilities and ADHD. 28 C.F.R. § 36.105(b)(1)(ii) and 28 C.F.R. § 36.105(b)(2). Accordingly, the ADA expressly asserts that one with a specific learning disability and/or ADHD is entitled to protection under the Act.

The term "substantially limits" is to be construed broadly in favor of expansive coverage. Accordingly, "substantially limits" is not meant to be a demanding standard. 28 C.F.R. § 35.105(d)(1)(i). The ADA regulations provide that in determining whether an individual is substantially limited, it may be useful to consider, as compared to most people in the general population, the condition, manner, and duration in which the person performs the major life activity. 28 C.F.R. § 36.105(d)(3)(i).

The documentation provided herein describes in detail the difficulties Mr. Wright has encountered throughout his academic career as a result of his impairments, from his elementary school years through the present. Mr. Wright has had two evaluations by Dr. Terri Lucero, Ph.D., identifying substantial limitations of reading, reading under timed conditions, concentration and processing of information through reading under timed conditions. Ex. 1:29-31. Additionally, Mr. Wright was approved by the University of Denver for extra time for testing.

The ADA effectively mandates that the NBME provide accommodations based on the recommendations from professionals, such as Dr. Lucero, who has provided two first-hand in-person evaluations of Mr. Wright in 2017 and 2021. The ADA's regulatory guidance provides that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodations, or aid requested. See 28 C.F.R. § pt. 36, app. A,

10

at 782-784. "This is particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation." 28 C.F.R. Part 36.

The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." (Emphasis added) 28 C.F.R. pt. 36, app. A, at 784. See also *D'Amico v. N.Y. State Bd. Of Law Examiners*, 813 F. Supp. 217, 223 (W.D.N.Y. 1993) Dr. Lucero conducted two extensive evaluations of Mr. Wright, which included her own observations and administration of various assessments. Based on these evaluations she reported that Mr. Wright is a person with disabilities and recommended several accommodations including 50% extended time on tests. Dr. Lucero's recommendations under the regulatory guidance is to be given precedent's over the opinions of NBME's evaluators and consultants who conducted only a paper review.

Moreover, pursuant to the ADA, Mr. Wright's use of accommodations during his post-secondary education are to be accorded considerable weight when making accommodation determinations. 28 C.F.R. §36.309(b)(1)(v). Mr. Wright received approval for extended time on tests from the University of Denver. See Ex. 1:33. Mr. Wright's history of accommodations is to be accorded considerable weight and is not to be ignored or discredited by the NBME.

The accommodation of extended time ameliorates the nature of Mr. Wright's impairments, including but not limited to slow reading, impaired reading comprehension, slow processing speed and diminished concentration. The significant impairments individually and collectively create a barrier that interferes with Mr. Wright's ability to attend to and read through reading passages such as those found on multiple choice questions on the USMLE Step 3 test.

11

Mr. Wright's experience in taking the USMLE Step 3 reflects that due to impairments, he was unable to effectively read, digest, and respond to questions in the time limit set for the exam, resulting in three failures. The inability to complete substantial portions of the USMLE Step 3 is tantamount to a denial of access to the exam. Moreover, if Mr. Wright is unable to complete the reading in a timed manner on the USMLE Step 3, the Colorado Medical Board would not be in a position to make a proper conclusion about his application for licensure.

NBME's 2021 denial (Ex. 1:91-93) primarily focuses on the outcome (i.e. scores) on his unaccommodated passing of the USMLE Step 1 and Step 2 as the basis for determining that Mr. Wright does not have a disability. This determination is contrary to the express guidance issued by the Department of Justice in its implementation of the regulations under Title III of the ADA, providing:

> Congress's discussion of the relevance of testing outcomes and grades clearly indicates that it did not consider them definitive evidence of the existence or nonexistence of a disability. While tests and grades typically are numerical measures of performance, the capacity to quantify them does not make them inherently more valuable with respect to proving or disproving disability. 81 Fed. Reg. 53237 (August 11, 2016)

Accordingly, NBME's focus on grades and outcomes on a standardized test has little or no relevance when making accommodation determinations. See also, *Bartlett v. New York St. Bd. Of Law Exam'rs*, 2001 U.S. Dist. LEXIS 11926 at *122 (S.D.N.Y. Aug. 15, 2001).

**C. Plaintiff Will Suffer Irreparable Harm if the Injunction is Not Granted**

Courts have presumed irreparable harm when there was a violation of the ADA, since the statute's goals, "include assuring that all individuals with disabilities enjoy equality of opportunity, full participation, independent living, and economic self-sufficiency." *Cupolo v. Bay Area Rapid Transit,* 5 F.Supp.2d 1078, 1084 (N.D.Cal. 1997) (quoting 42 U.S.C. § 12101). Consequently, "[i]njuries to individual dignity and deprivation of civil rights constitute

12

irreparable injury." *Id*. see also, *Burriola v. Greater Toledo YMCA*, 133 F.Supp.2d 1034, 1040 (N.D. Ohio 2001) (holding that there is irreparable harm when a person is discriminated against on the basis of disability). Courts also view as irreparable injury a person's psychological harm in not being able to pursue his chosen procession. In *Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011), the Ninth Circuit affirmed the grant of a preliminary injunction requiring bar exam administrators to provide accommodations for a blind test-taker, explaining that he had, "demonstrated irreparable harm in the form of the loss of opportunity to pursue his chosen profession." *Id.* Furthermore, irreparable harm occurs when a disabled person is barred from participating in a normal life activity by virtue of ongoing discrimination related to her disability. See *D'Amico*, 813 F.Supp.2d at 220 (finding irreparable harm for failure to make reasonable accommodations on bar exam). Accordingly, Mr. Wright will be irreparably harmed unless this Court issues a preliminary injunction.

The USMLE Step 3 test is the prerequisite for application for a medical license and ultimately for the practice of medicine. Mr. Wright cannot proceed to apply for a medical license in Colorado without first passing the USMLE Step 3 test. If Mr. Wright fails the October 21 and 25, 2021 sitting for the USMLE Step 3 test, he will have exhausted the general time limit set by the Colorado Medical Board, and will need to request an exemption from the Board's ten year time frame for passage of all three USMLE Step tests. Such an exemption may be granted by the Board, in its sole discretion, if Mr. Wright demonstrates good cause. If Mr. Wright does not take the USMLE Step 3 test with accommodations, that test will function as a complete barrier to Mr. Wright entering the medical profession as a physician and to practicing medicine. The USMLE Step 3 test without accommodations will not best ensure that the exam results will reflect his true ability or achievement level. Rather, his score will reflect the substantial impact of his disability.

See 28 C.F.R. § 36.309(b)(1)(i). See *Jones*, 802 F.Supp.2d at 286-88. Additionally, if he does not receive appropriate and reasonable accommodations, he will lose the ability to earn a living. The NBME's refusal to provide appropriate accommodations places Mr. Wright at a disadvantage and may end his medical career in which he has invested considerable time and money. Ex. 1:94-97. This immediate and actual harm cannot be repaired absent preliminary injunctive relief. Moreover, as noted above, no other remedy at law is available in that the only relief available under the ADA is injunctive relief. See, *Powell v. Nat'l. Bd. of Med. Examiners*, 364 F.3d 79, 86 (2nd Cir. 2004) (holding that "a private individual may only obtain injunctive relief for violations of a right granted under Title III… .")

Courts have granted preliminary injunctive relief against testing agencies under similar circumstances. See *Berger v. Nat'l. Bd. of Med. Examiners*, 2019 LEXIS 145666, at *83, 89. (finding irreparable harm if Plaintiff is required to take USMLE Step 2 test without accommodations in that he would likely fail the test due to discriminatory circumstances and he would be unable to pursue his chosen profession); *Jones,* 802 F.Supp.2d at 286-88 (finding irreparable harm if Plaintiff is required to take a "high stakes" exam in discriminatory circumstances); *Enyart*, 630 F.3d at 1165 (finding irreparable harm in the form of loss of pursing ones chosen profession). Moreover, if Mr. Wright is not permitted to take the USMLE Step 3 test with appropriate accommodations at the October 21, and 25, 2021 sitting (or at a subsequent sitting if he fails to pass in October), he will be irreparably harmed because he will lose the extensive time he has invested in preparation for the exam. See *Agranoff*, 97 F.Supp.2d at 88 (found irreparable harm because of loss of time and effort spent in preparatory course and with tutor for the LSAT).

14

**D. The Equities Weigh in Favor of Granting the Preliminary Injunction**

The NBME's denial of Mr. Wright's accommodation request denies him the opportunity to take the USMLE Step 3 in a non-discriminatory manner and on equal footing with non-disabled test-takers, in violation of federal law, and constitutes an irreparable injury, which would be mitigated by the issuance of a preliminary injunction. By contrast, the harm that an injunction would cause the NBME or others is negligible.

Further, the issuance of an injunction providing Mr. Wright with his requested accommodations will not affect other USMLE Step 3 test takers. The nature of the appropriate accommodations requested by Mr. Wright simply places him on equal footing with non-disabled test takers, and does not provide him with an unfair advantage on the exam. *D'Amico*, 813 F.Supp.2d at 221 (purpose of ADA "is to place those with disabilities on an equal footing and not to give them an unfair advantage"). Furthermore, it has been held that the threatened injury to the student outweighs any damage that granting the preliminary injunction might cause to the NMBE or other licensing entities or to the public. See e.g., *Rush*, 268 F.Supp.2d at 679.

The NBME approves 100% extended test time for other test takers. See e.g., *Mahmood v. National Board of Medical Examiners*, Civ. A. No. 12-1544, 2013 U.S. Dist. LEXIS 19811, at *8-*9 (E.D. Pa. Feb. 14, 2013) (noting NBME has granted 100% extended time). NBME will suffer no harm if it grants Mr. Wright 50% extended time on his examination, in accordance with its policy of providing extra time for students with disabilities.

While the NBME will suffer no harm if it grants him 50% extended time, a quiet environment free of distractions typical of standardized testing, and extended breaks, there is a likelihood that Mr. Wright will fail the USMLE Step 3, based on three past performances, if he is not afforded the accommodations. This will result in delay in applying for a medical license and

practicing medicine, and will leave Mr. Wright in serious debt associated with his medical school tuition and expenses. For these reasons, the NBME's refusal to grant the extended time, quiet environment and extended breaks is outweighed by the significant harm that Mr. Wright will experience.

**E. Granting an Injunction Will Advance the Public Interest**

The ADA was enacted to serve the strong public interest to "elimin[ate] discrimination against people with disabilities." 42 U.S.C. § 12101(b)(1). In the context of preliminary injunctions, courts have found that the public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones v. City of Monroe, MI*, 341 F.3d 474, 490 (6th Cir. 2003); See also *Agranoff*, 97 F.Supp.2d at 88 ("court has an obvious public interest in providing those with disabilities equal footing"). Furthermore, the policy considerations embodied in the ADA are made explicit in the findings and purpose of the Act. Specifically, the Act provides, "individuals with disabilities continually encounter various forms of discrimination" which includes "the failure to make modifications to existing facilities and practices" and "exclusionary qualification standards and criteria." 42 U.S.C. § 12101(a)(5).

In the context of testing accommodations, Congress explained that it enacted 42 U.S.C. § 12189 "to assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an inaccessible site or without accommodation." *Rawdin v. American Bd. of Pediatrics*, 582 F.App'x 114, 118 (quoting H.R. Rep No. 101-485(III), at 68-69 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 491-92). For these reasons, granting a preliminary injunction would further the public interest in eradicating discrimination against individuals with a disability.

## II. CONCLUSION

For the foregoing reasons, Mr. Wright requests that his Motion be granted and that the Court issue a preliminary injunction against Defendant NBME compelling NBME to provide appropriate accommodations to Mr. Wright at the USMLE Step 3 test to include:

- First, extended time and a half on all portions of testing;

- Second, a separate quiet environment free from typical distractions of standard classroom on all sections of the USMLE Step 3 test, and

- Third, additional, stop-the-clock or extended breaks during testing.

- The injunction should require the testing accommodations at the October 21, and 25, 2021 sitting and at any subsequent sitting if Mr. Wright does not pass the exam at the October 21, and 25, 2021 sitting.

Respectfully Submitted,

*/s/ Eric Maxfield           .*
Eric Maxfield
Eric Maxfield Law, LLC
3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone: (303) 502-7849
eric@ericmaxfieldlaw.com

Date:  September 15, 2021

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

17

## CERTIFICATE OF SERVICE

I certify that a true copy of this Memorandum in Support of Emergency Motion for Preliminary Injunction was provided to counsel for Defendant National Board of Medical Examiners on this 15th day of September, 2021 by email to the address below, with notice by electronic service:

Robert Burgoyne, Esq.
Lindsey Erin Dunn, Esq.
Perkins Coie, LLP

RBurgoyne@perkinscoie.com
LDunn@perkinscoie.com

                                            */s/ Eric Maxfield*
                                            Eric Maxfield