# EXHIBIT 9

June 1, 2019

Catherine Farmer, Psy.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

I am writing in regard to the materials submitted by Jason Wright (USMLE #0-823-893-3), who has requested accommodations for the USMLE Step 3 exam. In his application, Jason indicated that he was diagnosed with a learning (reading) disability (315.00) in 2017 (40 years of age) and AD/HD inattentive type (314.00) in 2011. I will review the claim of reading disability and comment on the claim of AD/HD. Jason submitted and I reviewed the following materials: 1) a personal statement dated 9/29/18; 2) a Medical Student Performance Evaluation written by Dr. Paula Wales dated 8/8/13; 3) copies of his SAT, ACT, GRE, and MCAT scores; 4) copies of his USMLE Step 1, Step 2 CK, and Step 3 exam scores; and 5) a psychoeducational assessment completed by Dr. Terri Lucero in 10/17.

Based on my review of the documentation submitted by Jason, it is my opinion that the objective evidence does not support the diagnosis of reading disability. The objective evidence does not show that he has exhibited substantial impairments in reading at any time during his academic career. Instead, the objective evidence demonstrates that Jason is able to learn and achieve at a level commensurate with his peers in the general population. The following evidence is offered in support of my opinion.

First, there is no objective evidence in the documentation which shows that Jason has a longstanding history of substantial impairments in reading during his school-age years, in his undergraduate and graduate education, and in his medical school education. He did not submit any of his elementary, middle, and secondary school records nor did he submit his undergraduate and graduate transcripts. However, Jason achieved in the average range on all sections of the ACT, including the English ($SS = 17$) and Reading ($SS = 19$) sections, when compared to a *select* population. He also achieved in the average range on the SAT each time he took the exam when compared to a *select* population. Likewise, he achieved in the average range on all sections of the GRE, including the Verbal (45th percentile) and Writing (51st percentile) sections. Jason earned a B.S. in Psychology and a Master's degree in Public Health when compared to *select* populations. The letter written by Dr. Wales indicated that Jason performed at a "highly satisfactory level" in his first two years of medical school. Jason has been successfully employed as a Research Assistant and as a paraprofessional and substitute teacher in public schools. He also passed the USMLE Step 1 and Step 2 CK exams. *All* of the aforementioned accomplishments were attained *without* the benefit of accommodations. The available documentation shows that Jason achieves at a level commensurate with his peers in the general population and contradicts the claim of substantial impairments in reading.

Second, the available documentation contains no objective evidence that Jason was diagnosed with a disability prior to 40 years of age. A disability for learning is typically identified in elementary school, i.e., it is a developmental disability that emerges during childhood. Even if a student is not formally diagnosed, he should present objective evidence showing that he had severe problems early in school and then throughout his school career. Although Jason reported that he has reading difficulties, there is no objective evidence which shows that he exhibited substantial impairments in reading when he was compared to his peers in the general population at any time prior to the recent diagnosis.

Case No. 1:21-cv-02319-GPG-KLM Document 11-10 filed 09/24/21 USDC Colorado pg 4 of 6

Third, Dr. Lucero based the diagnosis of reading disability on: a) aptitude-achievement discrepancies, i.e., "...reading abilities are weaker than would be anticipated given his cognitive abilities…" (p. 8); b) impairment in reading comprehension; and c) "significant weaknesses in oral reading fluency…" (p. 13). However, it has been well-known that the diagnosis of disability based on discrepancy analysis is invalid. Moreover, it has been well-known for many years that individuals routinely display discrepancies between their highest and lowest scores. Also, Jason did not display "significant weaknesses" in oral reading fluency. Instead, he achieved in the average range on the WIAT-III Oral Reading Fluency subtest ($SS = 99$) and the Reading Comprehension and Fluency Composite ($SS = 104$). In addition, Jason did not exhibit impairments in reading comprehension. He achieved in the average range on the WIAT-III Reading Comprehension subtest ($SS = 107$) and the Reading Comprehension and Fluency Composite ($SS = 104$). Jason also achieved in the average range on the WIAT-III Total Reading ($SS = 108$) and Basic Reading ($SS = 112$) Composites and the Word Reading ($SS = 112$) and Pseudoword Decoding ($SS = 111$) subtests. Dr. Lucero administered the GORT-5 reading assessment, but admitted that this measure has not been normed for individuals of Jason's age. Even so, she mistakenly used this measure to suggest that Jason's oral reading comprehension was "significantly lower than expected." Dr. Lucero compounded her error by reporting only grade and age equivalent scores and then using these scores for comparison and diagnostic purposes. However, it is psychometrically inappropriate to use age and grade equivalent scores for these purposes. In any case, the objective data in Dr. Lucero's report show that Jason's reading skills are in the average range and commensurate with his peers in the general population.

Fourth, the available documentation does not provide objective evidence that Jason meets the criteria for Specific Learning Disorder with impairment in reading because he does not meet the DSM-5 criteria for this disorder. There is no objective evidence that he exhibited difficulties learning and

4

using academic skills for any length of time before he was diagnosed with a disability at 40 years of age while enrolled in medical school and after he had passed the USMLE Step 1 and Step 2 CK exams (Criterion A). Likewise, there is no objective evidence that his academic skills are substantially and quantifiably below those expected for his chronological age, that poor academic skills cause significant interference with academic performance or activities of daily living, or that he has a documented history of substantial impairments in learning (reading) (Criterion B). In addition, there is no objective evidence that he exhibited learning problems in his school-age years and his undergraduate, graduate, and medical school education (Criterion C). Although Jason indicated that he has reading difficulties, many individuals in the general population without disabilities exhibit characteristics similar to those that he described.

Fifth, the objective evidence included in the documentation does not rule out other factors that may impact on any perceived reading difficulties. Jason included a diagnosis of AD/HD in his application, but did not provide supporting documentation for the diagnosis. Dr. Lucero did not diagnose AD/HD, but stated that Jason "…intermittently experiences depressive episodes and appears to have underlying anxiety symptoms associated with the examination requirements…" Given this information, it is reasonable to suggest that there may be other explanations for any self-reported reading problems.

Overall, the available evidence shows that Jason has the ability to achieve in reading at a level commensurate with his peers in the general population. The objective documentation shows that he has not exhibited substantial impairments in reading at any time in his school career. Prior to being diagnosed with a disability, Jason earned undergraduate and graduate degrees when compared to select populations. He also passed the first three years of courses in his medical school education when

5

compared to a highly selective population. His strong academic record was achieved *without* the benefit of accommodations. At this time, the objective documentation does not support a finding of disability under the ADA because there is no evidence that he is substantially limited in a major life activity. Thus, it is my conclusion that the request for accommodations should be denied.

Sincerely,

Richard L. Sparks, Ed.D.