# EXHIBIT 10



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**<u>Confidential</u>**

July 16, 2019

Jason M. Wright
2515 Albion Street
Denver, CO 80207

RE: USMLE Step 3                              USMLE ID#: 0-823-893-3

Dear Dr. Wright:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 3. We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder (ADHD) diagnosed in 2011 and Specific Learning Disorder diagnosed in 2017.  In your personal statement you write, "*The 1st exam date came and went, and I continued working until the inevitable 'FAILED' score report was returned to me. The GME office and my residency program immediately drew up a Letter of Concern removing me from my clinical duties at the end of June 2017 and giving me until December 31, 2017 to retake and receive a passing score for USMLE Step 3 or risk being terminated from the program. It should go without saying that this only added to my already mounting anxiety. In late October 2017/early November 2017, during my unpaid LOA, and after struggling with studying for Step 3 yet again, I decided to get a psychoeducational assessment to better understand my standardized test taking problems. The results were very illuminating but not at all what I expected. My assessment identified me as an Adult with 2e (Gifted IQ + ADA qualifying Disability)…I now know that my specific learning disability (SLD) in reading comprehension related to my 2e identification is the reason why I struggle on these timed exams and is why I ask you for these exam accommodations as detailed in the attached documentation for my 3rd attempt at USMLE Step 3.*"

Included with your submission was a September/October 2017 report of Psychoeducational Evaluation by Terri Lucero, Ph.D. who writes, "*Mr. Wright is a forty-year-old, right-handed, English-speaking, biracial (Caucasian/Black) male who was self-referred for psychoeducational evaluation. Mr. Wright is currently completing a medical residency in physical medication and rehabilitation at Wayne State University in Michigan. He was recently placed on unpaid leave from his residency due to his inability to pass the USMLE Step 3 exam required of all medical residents…The score patterns observed on the current assessment indicates that Mr. Wright has a Specific Learning Disability, with impairment in reading comprehension. He also reports symptoms of inattention, which are likely secondary to his previously undiagnosed learning disability. His struggles with attention and concentration seem to have the most impact when he is engaged in activities involving reading or studying, which suggest that they are a result of his learning disability, rather than a primary ADHD.*"  Your evaluator assigns the diagnosis of Specific Learning Disorder, with impairment in reading comprehension and she recommends testing accommodations such as time and one-half to double extended test time, use of text to speech, and test taking in a separate, quiet location to minimize distractions.

According to the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*, a key diagnostic feature of a specific learning disorder is that the individual's performance of the affected academic skill(s) is well below average for age (*DSM-5* Criterion B).  Your evaluator interprets your performance on the *Wechsler Individual Achievement Test – Third Edition (WIAT-III)* writing, "*Overall, his reading skills were in the **average range** and better than about 70% of his peers (Total Reading Composite = 108)…Mr. Wright's performance on a task that required him to read passages aloud under timed conditions was in the **average range** and better than 49% of peers (Oral Reading Fluency). His accuracy in reading passages aloud was **above average** and better than*

*87% of peers, while his rate of reading these passages aloud was in the average range and better than 50% of peers. Mr. Wright's ability to silently read grade-appropriate passages and answer open-ended comprehension questions by provided an oral response was **average** for individuals his age and better than about 68% of his peers (Reading Comprehension).*" Your 2017 performances on a range of academic achievement tasks, including Total Reading, Basic Reading, Reading Comp. and Fluency, Word Reading, Pseudoword Decoding, Oral Word Fluency, Oral Reading Fluency, and Reading Comprehension, are all within the range of Average to Above Average functioning and not indicative of impairment.

As described in the *DSM-5*, Specific Learning Disorder and ADHD are both considered neurodevelopmental disorders that first manifest in childhood. Even if not formally diagnosed until later in life, each is characterized by persistent and impairing difficulties that interfere with functioning or development over a long period of time. Overall, your documentation does not show a history of chronic and pervasive problems managing daily demands for attention, organization or executive functioning during your development or at the present time, nor does it demonstrate a developmental history of significant problems with reading or learning that impaired your academic functioning or that currently limits a major life activity. Although academic records were not provided for our review, the August 8, 2013 Medical Student Performance Evaluation by Paula S. Wales, Ed.D., includes information about your educational history. Dr. Wales writes, "*Compared with his peers,* **Mr. Wright** *performed at a* **highly satisfactory** *level in the basic sciences. His* **Step 1** *score was* **226**. *His overall clinical performance was* **outstanding** *when averaging subjectively-determined evaluations.* **Mr. Jason Wright** *entered Ross University with a Bachelor's degree in psychology, professional research experience, and clinical exposure from hospital volunteer work. At Ross, Jason successfully completed his study of basic sciences without remediation. During his studies he volunteered in several community health settings and assisted his peers with active involvement in clinical practice sessions. He earned an official commendation for showing 'respect to program coordinators' and taking advantage of a scheduling miscommunication as a self-directed learning opportunity. He has continued to give solid performances in clinical rotations and is consistently praised for his 'clinical and physical exam skills' and 'fund of knowledge.' Jason has demonstrated himself as a 'hardworking, bright, excellent student' who 'will make an excellent physician.' In observation of these qualities, combined with the professional, intellectual, and personal assets essential to meeting the demands of residency, those who have trained Mr. Wright believe he will become a highly qualified physician.*" [Emphasis in original.] You progressed throughout your education with an academic record and scores on timed standardized tests sufficient to gain admission to and graduate from college and medical school without formal intervention, evaluation, or accommodations. Regarding your performances on timed standardized tests, the records provided show that you successfully completed USMLE Step 1, Step 2 CK, and Step 2 CS under standard time conditions. Taken altogether, the data and information provided do not demonstrate impaired functioning relative to most people or that standard test timing is a barrier to your access to the USMLE.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities compared to most people in the general population.

Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are an appropriate modification of your USMLE Step 3 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise the Federation of State Medical Boards (FSMB) Assessment Services to process your exam application without test accommodations. You may inquire at usmlereg@fsmb.org or call FSMB Assessment Services directly at (817) 868-4041 with any questions about your scheduling permit.

Sincerely,

*Lucia McGeehan*
Lucia McGeehan, Ph.D.
Disability Assessment Analyst, Disability Services