# EXHIBIT 14

--------------- Original Message ---------------
From: Eric Maxfield [eric@maxfieldgunning.com]
Sent: 3/29/2021 7:02 PM
To: disabilityservices@nbme.org
Subject: USMLE ID 08238933 Jason Wright Step 3 Reasonable Accommodation Request / Related Materials

Dear NBME,
I represent Jason Wright. Attached please find my letter detailing his Reasonable Accommodation request, his personal statement in support of the request, and related supporting materials.

Thank you for your attention to this request. Please let me know if we may provide any additional information.

Sincerely,

Eric H. Maxfield
Maxfield Gunning, LLP

direct line 720-925-4615
www.maxfieldgunning.com

Our address has changed to
3223 Arapahoe Avenue, Suite 300
Boulder, Colorado 80303
(720) 586-8567
eric@maxfieldgunning.com

This email message and any attachments may contain privileged and/or confidential business information and are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender immediately by reply email and destroy all copies of the original message and any attachments.

 **Maxfield Gunning, LLP**

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

3/29/2021

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

Dear NBME:

I write on behalf of Jason Wright, M.D. to request a reasonable accommodation on the USMLE STEP 3 test. In support, I provide this letter, Dr. Wright's personal statement, a complete comprehensive evaluation, and supporting documentation.

This request is made under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and 28 C.F.R. 36.102-36.104

**Posture**

Dr. Wright requested an accommodation in 2018. That accommodation was denied on July 16, 2019. The basis of the denial, according to the NBME letter, was:
> "Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are an appropriate modification of your USMLE Step 3 test administration."

Over three years have elapsed since the assessment relied up on by Dr. Wright in making that request. Without commenting on the whether the decision of NBME at that time was correct or not, Dr. Wright now presents an updated comprehensive assessment. That assessment reflects a substantial limitation of a major life activity, and the requested accommodation is an appropriate modification of the USMLE Step 3 test administration.

**The January 3, 2021 assessment of Jason Wright, M.D. by Dr. Terri Lucero, Ph.D., licensed neuropsychologist**

Dr. Lucero determined that Dr. Wright has areas that are well below average, including in the 3rd, 30th, 12, and 25th percentile in relation to his peers. These include reading rate, timed oral reading fluency, timed reading comprehension, timed reading accuracy, as well as distractability and organization in timed circumstances. These are patently substantial limitations on cognition.

**The assessment made key findings concerning Dr. Wright, in addition to diagnoses:**
• His Reading Rate, as measured by the Nelson Denny Reading Test was at the $3_{rd}$ percentile compared to his peers. This certainly would have caused Mr. Wright to lose valuable time when reading the complex text required on the USMLE Step 3.
• There was an obvious difference in his performance on untimed reading tasks on the WIAT-4

**Maxfield Gunning, LLP**

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

and timed reading tasks on the WIAT-4 and NDRT, particularly when the reading involved longer passages to answer comprehension questions. Specifically:
- o His performance on the timed WIAT-4 Oral Reading Fluency task was at the $30_{th}$ percentile, and substantially weaker than his untimed Reading Comprehension performance ($75_{th}$ percentile).
- o On the Nelson-Denny Reading Test, his Reading Comprehension was below average and fell at the $12_{th}$ percentile when the test was administered with the standard time limit. His performance rose to the average range at the $68_{th}$ percentile under the Extended Time condition.

• On the WIAT-4 his reading scores were well below what would be expected of someone with superior verbal reasoning skills. His reading accuracy was only at the $25_{th}$ percentile, indicating he made several mistakes while reading passages. Such mistakes likely lead to decreased efficiency during test taking and possibly a tendency to misunderstand what is being asked of him.

• Mr. Wright continues to experience significant symptoms of ADHD, particularly inattention and executive function weaknesses including trouble with task initiation, shifting from one idea or activity to another, and organizational skills.

• On a computerized continuous performance task, there was evidence of notable distractibility during auditory attention tasks, despite him having taken the test after taking prescription stimulant medication used to treat ADHD symptoms. This indicates that he is still susceptible to moments of severe distractibility, even while being treated for ADHD.

**The assessment determined diagnoses:**

Diagnoses are not a prerequisite under the ADA to establish a need for accommodation on testing. However, they help provide categorical detail to the testing undertaken by Dr. Lucero. The details make plain the practical need for the requested accommodations.

DSM-5 (ICD-10) DIAGNOSES:
315.00 (F81.0) Specific Learning Disorder, with Impairment in Reading (deficits in reading fluency, and reading comprehension – Reading rate at 3rd percentile, Reading Comprehension at 12th percentile on timed tasks)
314.00 (F90.0) Attention Deficit/Hyperactivity Disorder, Inattentive Type, Mild
311 (F32.8) Other Specified Depressive Disorder

**The twice-exceptional concept:**
Dr. Lucero emphasized the challenges and interplay between Dr. Wright's abilities and disabilities.
> "It is essential that Mr. Wright's performance is evaluated within the context of his advanced intellectual/reasoning abilities. His patterns of performance are consistent with those of individuals who are Twice-Exceptional (2e) – with gifted intellectual abilities in addition to underlying learning differences. These 2e individuals can often use strong reasoning skills to compensate (at least partially) for symptoms of learning differences

 **Maxfield Gunning, LLP**

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

> and ADHD, especially in primary and secondary school (Webb et al., 2016). It is not uncommon for 2e individuals to perform well, or at least "average" in school and on exams in comparison to their peers, and for their learning differences AND their gifted abilities to be "masked."
>
> Yet this often comes at a high cost to the individual, both emotionally and cognitively, as 2e individuals generally have to expend substantial effort, often significantly more time than their "intellectual peers," in order to achieve academic "success," which is often lower than their aptitude."

As Dr. Lucero explained reasons why Dr. Wright has not received prior accommodations:
> "Individuals with learning disabilities, and especially those who also have advanced intellectual abilities like Mr. Wright, are often caught in a bind. If they do "well" (i.e., performance in the average range, or above, compared with peers) then they are not seen as having a learning difference, and if they fail at some other task then they are simply seen as not having put forth enough effort. Unfortunately, many professionals – both in the field of education and in the field of psychology – do not receive training regarding the unique characteristics of gifted and twice-exceptional individuals, thus these unique learners are often missed entirely throughout their academic careers and their lives. This explains why Mr. Wright has not previously received accommodations. Throughout his life, he acknowledges that parents and teachers, and he himself, did not recognize the need for assistance, and he continued to fall through the cracks, because of a belief that he simply needed to "try harder." Yet, he has consistently shown an incredible amount of determination to persist in pursuing his goal of becoming a medical doctor."

Dr. Lucero further opines on the intersection of her medical opinion with the requirements of the Americans with Disabilities Act:
> "It is important to note that, under the ADA, determining whether a disability "substantially limits" a major life activity is not to be based on the outcomes a person is able to achieve. Rather, the focus must be on how the life activity itself is impact. If additional and excessive time and energy must be put forth by the individual to achieve "success," then this meets the definition of a "substantially limited" life activity."

**The assessment recommends:**
RECOMMENDATIONS:
Testing Accommodations: In accordance with the provisions of the Americans with Disabilities Act (ADA), Mr. Wright should be offered the following accommodations on the USMLE Step 3:
1. Extended Time – It is recommended that Mr. Wright be allowed Time and a Half on all portions of testing in order to produce a performance on testing that is commensurate with his cognitive and academic abilities, and his practical skills in medical care. An evaluation of his performance on timed versus untimed reading comprehension tasks (summarized above) revealed that he has a

 **Maxfield Gunning, LLP**      3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

reading rate that is substantially below average and that his reading comprehension is consistently compromised under timed conditions.
2. Separate Quiet Environment – Mr. Wright's ADHD, despite treatment with stimulant medication, leaves him susceptible to being distracted by environmental cues and will do best if allowed to take tests in a separate, quiet environment free from typical distractions of the standard classroom or testing setting.
3. Additional, Stop-the-Clock or Extended Breaks – The extra time and effort needed to complete reading tasks can be quite draining and cause fatigue that may further negatively impact Mr. Wright's performance. He would benefit from being allowed to take extra, stop-the-clock, or extended breaks during testing.

In sum, Dr. Lucero found in Dr. Wright substantial limitations of major life activities along with exceptionally gifted qualities that tended to be masked through earlier standardized and high stakes testing. Dr. Lucero brought her specialized knowledge of "2e" individuals to bear to define Dr. Wright's diagnoses and needs in the practical circumstances of the USMLE Step 3 test. Dr. Lucero determined Dr. Wright's needs specific accommodations to the USMLE testing protocol in order to address his disabilities and participate fully and equally in the program.

**The requirements of the law in relation to the unique nature of Dr. Wright's circumstance**

The U.S. Department of Education (USDE), along with the U.S. Justice Department, has enforcement authority over the ADA. The USDE also enforces the Individuals with Disabilities Education Act (IDEA). Like Section 504 of the Rehabilitation Act, the ADA and IDEA each have the same concept of what it is to have a "disability". As such, the USDE's interpretation of the way that the IDEA is applied as to determining whether accommodations are required is a mirror of that required by the ADA Title III in relation to professional testing.

The Director of Special Education Programs at the U.S. Department of Education, Melody Musgrove, Ed.D., wrote a guidance letter to State Directors of Special Education concerning children with disabilities with high cognition under the Individuals with Disabilities Education Act. April 17, 2015 (attached).
In Dr. Musgrove's letter she stated:
> I am writing to draw your attention to the Office of Special Education Programs' (OSEP) December 20, 2013 letter to Dr. Jim Delisle (*Letter to Delisle*) regarding determining eligibility for special education and related services under the Individuals with Disabilities Education Act (IDEA) for children with disabilities with high cognition; students who Dr. Delisle terms "twice exceptional students" or "2E students." *Letter to Delisle* pointedly addresses children with high cognition who may be eligible for special education and related services as a student with a specific learning disability, but also cites to the broader requirements in 34 CFR §300.304(b)(1) and (2) that state, in part –
> … in determining whether a child has a disability … the IDEA requires the use of a variety of assessment tools and strategies to gather relevant functional, developmental, and academic

 **Maxfield Gunning, LLP**

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

> information about the child, and prohibits the use of any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child."

The guidance letter was issued by Dr. Musgrove because, in spite of the guidance provided in *Letter to Delisle*, the Department of Education Office of Special Education Programs continued "to receive letters from those who work with children with disabilities with high cognition, particularly those with emotional disturbance or mental illness, expressing concern that some local educational agencies (LEA) are hesitant to conduct initial evaluations to determine eligibility for special education and related services for children with high cognition." Ms. Musgrave requested that State Directors of Special Education remind each LEA of its obligation to evaluate all children, regardless of cognitive skills, suspected of having one of the 13 disabilities outlined in 34 C.F.R. § 300.8.

This emphasis was perhaps necessary because the IDEA does not specifically address "twice exceptional" students. The Department of Education's position, per its December 20, 2013 *Letter to Delisle*, is that students who have high cognition and have disabilities and require special education and related services are protected under the IDEA. Simply put, the child must have a disability and, because of the disability, need special education and related services. The principle is identical under the ADA.

Public accommodations including USMLE must comply with basic nondiscrimination requirements under the ADA that prohibit exclusion, segregation, and unequal treatment. They also must comply with specific requirements related to reasonable modifications to policies, practices, and procedures; effective communication with people with hearing, vision, or speech disabilities; and other access requirements. Additionally, public accommodations must remove barriers in existing buildings where it is easy to do so without much difficulty or expense, given the public accommodation's resources. To that end, courses and examinations related to professional, educational, or trade-related applications, licensing, certifications, or credentialing must be provided in a place and manner accessible to people with disabilities, or alternative accessible arrangements must be offered.

**DOJ Technical Assistance**

The Department of Justice (DOJ) is charged with enforcing the Americans with Disabilities Act and with issuing technical assistance. To that end, the DOJ issued the following technical assistance on the requirements of the ADA. This guidance is meant to prevent public accommodations from acting on unjustified assumptions about individuals with disabilities.

> Can an entity refuse to provide modifications or aids for applicants with disabilities on the grounds that those individuals, because of their disabilities, would be unable to meet other requirements of the profession or occupation for which the examination is given? No. When an examination is one step in qualifying for a

 Maxfield Gunning, LLP

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

> license, an individual may not be barred from taking the examination merely because he or she might be unable to meet other requirements for the license. If the examination is not the first stage of the qualification process, an applicant may be required to complete the earlier stages prior to being admitted to the examination. On the other hand, the applicant may not be denied admission to the examination on the basis of doubts about his or her abilities to meet requirements that the examination is not designed to test.
>
> ILLUSTRATION: An individual with a disability may not be required to demonstrate that he or she is capable of practicing medicine in order to be provided with an auxiliary aid in taking a test for admission to medical school.

As a result of this DOJ guidance, USMLE is not permitted to look beyond this request for accommodation on the Step 3 test.

**Requested Reasonable Accommodation**

**Testing Accommodations:** In accordance with the provisions of the Americans with Disabilities Act (ADA), Dr. Wright should be provided the following accommodations on the USMLE Step 3:

**1. Extended Time** – It is recommended that Dr. Wright be allowed **Time and a Half on all portions of testing** in order to produce a performance on testing that is commensurate with his cognitive and academic abilities, and his practical skills in medical care. An evaluation of his performance on timed versus untimed reading comprehension tasks (summarized by Dr. Lucero) revealed that he has a reading rate that is substantially below average and that his reading comprehension is consistently compromised under timed conditions.

**2. Separate Quiet Environment** – Dr. Wright's ADHD, despite treatment with stimulant medication, leaves him susceptible to being distracted by environmental cues and will do best if allowed to take tests in **a separate, quiet environment free from typical distractions of the standard classroom or testing setting.**

**3. Additional, Stop-the-Clock or Extended Breaks** – The extra time and effort needed to complete reading tasks can be quite draining and cause fatigue that may further negatively impact Mr. Wright's performance. He would benefit from being allowed to take **extra, stop-the-clock, or extended breaks during testing.**

> On the USMLE form, these requests are reflected as follows:  On the bottom of page 3 ( **Section C: Accommodations Information**), under " **STEP 3: Check ONLY ONE box**"

 **Maxfield Gunning, LLP**

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

- Dr. Wright checked the box labeled "**Additional break time and 50% Additional test time (Time and 1/2) over 4 days**". *This addresses #'s 1 and 3 above.*

Directly below that where it states, " **Describe any other accommodation(s) you are requesting for** Step 1, Step 2 CK, or **Step 3**"

- Dr. Wright wrote in the request for "***a separate, quiet environment free from typical distractions of the standard classroom or testing setting***." *This addresses # 2 above.*

**Dr. Wright's Personal Statement**

Dr. Wright has provided a personal statement describing the limitations he experiences in major life activities. He further describes how the standard examination conditions are insufficient for his needs. He describes, in his own words, the impact of his impairments on his daily life, not only as they impact standardized test performance. Dr. Wright describes how the specific accommodations are necessary for this Step 3 examination.

**History of Accommodations**

Though he was approved for accommodations in 2019 by the University of Denver for graduate studies, Dr. Wright does not have a long history of accommodations. In being twice gifted, his strengths masked his substantial limitations. See "*The Twice-Exceptional Dilemma*" a publication of the National Education Association, (NEA) 2006 (attached). According to the NEA, "although there is evidence that students can be both gifted and disabled simultaneously, limited awareness causes many school systems not to provide services to students who are twice-exceptional. This practice is in direct opposition to the demonstrated needs of students with dual exceptionalities. In particular, two significant obstacles negatively impact how schools service twice-exceptional students: 1) inadequate identification procedures, and 2) the lack of access to appropriate educational experiences." Consequently, a lack of testing accommodation is not an indication of a lack of need for such accommodation.

As the USMLE indicates in its web site concerning accommodations, "The fact that you have previously received accommodations in other contexts is not, in itself, a sufficient demonstration of your need for accommodations on a USMLE examination." Likewise, the lack of a long history of prior accommodations is not determinative of whether the ADA requires provision of the accommodation. This is because the law does not require more than that one have a disability and a need for accommodation in order to fully participate in the public accommodation. As a matter of public policy, it would not make sense for prior testing to be determinative where such accommodations could have, and in some cases should have been made.

 Maxfield Gunning, LLP

3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone:  720-925-4615
eric@maxfieldgunning.com
www.maxfieldgunning.com

Dr. Wright was approved to receive accommodations from the University of Denver's disability services from 2019-2020 in relation to graduate coursework. The University of Denver approved Dr. Wright for extra testing time. By chance there were no tests undertaken in relation to Dr. Wright's graduate coursework, so the accommodations were not used.

Thank you for your consideration.

Sincerely,

Eric Maxfield
Maxfield Gunning, LLP