# EXHIBIT 25

'

April 5, 2021

Catherine Farmer, Psy.D.
Manager, Disability Services and ADA Compliance Officer, Testing Programs
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

RE:  Reconsideration Request of Dr. Jason Wright for Step 3 exam accommodations

Dear Dr. Farmer:

Thank you for forwarding the material on Dr. Wright for review.  He is requesting the accommodations of extended time (time and one-half over 4 days), a private testing room, and extra "stop the clock breaks" based on diagnoses of Attention Deficit Hyperactivity Disorder Predominantly Inattentive Type and Specific Learning Disorder with Impairment in Reading (deficits in Reading Fluency and Comprehension).  A previous request for accommodations on Step 3 was denied and he has submitted some additional documentation in support of his current request for reconsideration.  The additional documentation included a letter from Attorney Eric Maxfield, Dr. Wright's lawyer, an updated Personal Statement from Dr. Wright, a new evaluation report from Dr. Terri Lucero dated 11/4/20, a letter from his graduate program at University of Colorado Denver indicating he was approved for accommodations there (although he did not use them), his un-accommodated SAT, ACT, GRE, and MCAT scores, his un-accommodated Step 1, Step 2 CK, Step 2 CS, and Step 3 scores, his transcripts from Ross University Medical School and from University of Colorado Denver, and an article on "Twice Exceptional" students (gifted students with co-existing learning disabilities).  I have carefully reviewed his entire file (both the previous documentation and the new documentation recently submitted).

In my opinion, the documentation provided does not adequately substantiate an ADHD or Specific Learning Disorder diagnosis, a history of developmentally deviant and pervasive real world functional impairment consistent with ADHD or RD, or the existence of a disability and is therefore insufficient to warrant granting his requested accommodations.  My reasons for this opinion are as follows:

1.      Dr. Wright' problems appear to be largely specific to test taking and not performing as well as he would like on timed standardized tests – especially those associated with medical school such as USMLE Step Exams.  ADHD is more global than difficulty with test taking/finishing tests and impacts people over time and across situations in multiple life domains; not only in one circumscribed area such as timed standardized testing and/or medical school test taking.  In fact, ADHD is a developmental disability with a *childhood* onset that typically results in a chronic and pervasive pattern of functional impairment in academic, social, and vocational arenas, and also in daily adaptive functioning.  Dr. Wright's documentation does not adequately substantiate a history or magnitude of developmentally deviant pervasive impairment that is consistent with ADHD or a Specific Learning Disorder in Reading, in my opinion.  For example, despite his self-

2

reported longstanding ADHD-like symptoms since early childhood, he was not diagnosed with ADHD until 2011 during medical school, has no history of needing or using any accommodations over his entire academic/testing history, has no history of 504 Plans or IEP's, was awarded a Diversity Scholarship and a Minority Arts and Sciences Scholarship to attend college, had Composite scores within the Average range on the ACT on two occasions without accommodations, had SAT scores within the Average range on three occasions without accommodations, graduated from Metropolitan State College in Denver without accommodations, had GRE scores within the Average range without accommodations, successfully completed all of his courses in a Master's Program in Public Health with a 4.0 GPA, had MCAT scores in the Low Average range on two occasions without accommodations, passed the Step 1 exam on his second attempt without accommodations, passed the Step 2 CK exam on his second attempt without accommodations, passed the Step 2 CS exam on his first attempt without accommodations, apparently worked successfully as a Research Assistant and Substitute Teacher without any ADHD-like impairment or accommodations, performed very well in his Clerkships and clinical rotations, received a commendation for demonstrating professionalism and self-responsibility, had positive comments from his supervisors including "well prepared", "solid fund of knowledge", "hard working and bright", "exemplary work ethic", "advanced skills in assessment and management", "his histories were thorough and well organized", "meticulously completed assigned tasks", "solid performer in all aspects", "excellent student", "prompt", "one of the highest overall class averages in cardiology", "highly satisfactory level in basic sciences", "continuously praised for his fund of knowledge and clinical and physical exam skills", "mature, serious, and reliable", and "successfully completed his basic science training without remediation earning two Honors grades".   He also did not provide any convincing hard evidence of an early childhood onset of ADHD symptoms/impairment or reading impairment and has shown no convincing hard evidence of impairment in any other non-academic domains of functioning.  This is not the typical profile of someone struggling with ADHD (or a Reading Disorder) at the magnitude of a clinical diagnosis or a disability.

2.   Further, Dr. Wright provided no firsthand records or hard evidence that actually *showed* a pattern of developmentally deviant historical ADHD-like impairment in school, work, social, or daily adaptive domains.  More specifically, he provided no firsthand report cards or teacher comments from grades K through 12, no college transcript to verify his statement that he was on academic probation for much of college, no job performance reviews or Clerkship evaluations that documented any kind of ADHD-like or reading impairment, no report or documentation from the psychiatrist who reportedly first diagnosed him with ADHD in 2011 so we have no way of knowing on what basis this ADHD diagnosis was given or what assessment measures were used, and no other documentation that showed a history of ADHD-like symptoms or struggles.  Not performing as well as he would like or as well as expected on timed standardized tests can happen for any number of reasons, is not necessarily a symptom of ADHD, and is not evidence of impaired functioning.  Where is the paper trail of firsthand records that reflect a true struggle with ADHD over the course of his life?  Further, the fact that he never had any formal accommodations or psychological treatments prior to medical school raises a question as to how impaired he was.  Merely proclaiming to experience ADHD-like symptoms without *documented* impairment is not sufficient to substantiate a diagnosis or a disability.  Again, people can struggle in testing situations for any number of reasons besides ADHD, and struggling on USMLE Step exams is not a symptom of ADHD.  Overall, his documentation fails to adequately substantiate the pervasive developmentally deviant real world impairment over time and across situations that typically characterizes ADHD.

3

3.  Similarly, it is necessary to establish an early onset of symptoms/impairment in childhood to receive the ADHD diagnosis as an adult.  Again, no documentation or firsthand records (only self-report) were provided to substantiate a childhood onset of ADHD-like symptoms/impairment. Dr. Lucero indicated Dr. Wright had undergone an evaluation during pre-school at age 5 that suggested he had some ADHD-like symptoms such as forgetfulness, constant physical movement, and getting fatigued easily; but no documentation of this was provided. Hence, it is not clear that he would have met criteria for ADHD as a child.  ADHD by definition starts in childhood and causes developmentally deviant, chronic, and pervasive impairment in multiple domains of functioning; it does not just suddenly arise in medical school.

4.  His documentation also indicated that his parents and teachers did not recognize his need for assistance and that he "fell through the cracks" because he was performing only satisfactorily or in the Average range when he was capable of performing much higher.  With respect to the ADA, average performance on tests (even in the context of Superior IQ scores) and in one's real world performance is not considered to be evidence of impaired functioning.  In this sense, the "Twice Exceptional" argument put forth by Dr. Lucero and Dr. Wright is not particularly relevant with respect to the ADA's definition of "disabled", in my opinion.

5.  The ADHD diagnosis was not adequately substantiated with evidence of real world functional impairment in either of the two reports from Dr. Terri Lucero, in my opinion.  Dr. Lucero's ADHD diagnosis was based on self-report, symptom endorsement on a self-administered ADHD rating scale (CAARS), and test scores that are not diagnostic of ADHD.   This is not sufficient to establish an ADHD diagnosis or a disability.  Symptom endorsement on self-administered ADHD rating scales is not sufficient to substantiate an ADHD diagnosis, especially in the absence of any credible or documented real world functional impairment. Moreover, Dr. Wright's mother's ratings were in the normal range and not supportive of an ADHD diagnosis.  Almost all of his test scores were within at least the Average range (and many were in the Above Average to Superior ranges) suggesting no neurological dysfunction.  His Processing Speed Index scores of 117 (in 2017) and 120 (in 2020) were in the Above Average to Superior ranges which is not indicative of slow cognitive processing or a need for extra time.  Low Average or Below Average scores at one snapshot in time on Reading Fluency, Reading Comprehension, Timed Reading Accuracy, the Nelson Denny Reading Rate, and Math Fluency is not diagnostic of ADHD or RD and is not evidence of impaired functioning.  Continuous Performance Tests (such as the IVA) have not been shown to be particularly useful in either confirming or disconfirming an ADHD diagnosis due to their high false positive and false negative rates.

6.  His scores on several reading tests were within the Average range and not supportive of an impairment in reading.  More specifically, his Total Reading Composite on the Woodcock Johnson was 108 at the high end of the Average range, his Reading Comprehension and Fluency score in 2017 was at the 68th percentile, his Reading scores on the ACT were within the Average range, his SAT Verbal scores were in the lower end of the Average range, and his Oral Reading Comprehension score on the GORT was in the Average range.  Lower than expected scores that are still within the Average range in the context of an overall Superior IQ is not diagnostic of ADHD or RD, and is not evidence of impaired functioning.  The fact that he performed better on the Nelson Denny Reading Test under extended time conditions is not unusual, is not diagnostic of ADHD or RD, and is not evidence of impaired functioning.  The fact that he had to re-read passages in order to earn a score at the 68th percentile on Reading Comprehension is not evidence of an impairment.  Further, Dr. Lucero did not build a convincing case for the ADHD diagnosis in terms of showing us the chronic and pervasive real world functional impairment Dr. Wright experienced from his reported ADHD symptoms other than test taking difficulties in medical

4

school.  Dr. Lucero also offered no explanation or discussion as to why she did not diagnose ADHD in her 2017 evaluation and why she changed her mind and made a diagnosis of ADHD in her 2020 evaluation.  In her 2017 report she stated "he struggles with inattention and focus but these issues have not been present since childhood and thus do not meet criteria for a formal ADHD diagnosis".  However, she did conclude he had an ADHD diagnosis in her 2020 report.  Regardless, without a documented history of developmentally deviant real world functional impairment and concurrent validation from other original sources, the documentation presented here is not sufficient to substantiate that he has ADHD, RD, or a disabling condition, in my opinion. The fact that he was prescribed medication (Adderall) in no way substantiates an ADHD diagnosis.

7.  Accommodations are not granted on the basis of a diagnostic label.  Accommodation requests need to be tied to a history of functional impairment that points to their need.  His documentation has not shown a history of developmentally deviant impairment that shows a need for extra time, extra breaks, or a private room in order to have equal access to tests, and he has no history of seeking any accommodations until his graduate program in Public Health and more recently after failing the Step 3 exam for the second time.  He also apparently performed satisfactorily on the SAT, ACT, and GRE; and passed Step 1, and Step 2 CS and CK all without accommodations.  His statement that he has always had to work longer and harder than his peers to succeed is difficult to quantify, and even if true is not evidence of impaired functioning.   Moreover, if someone can compensate for their symptoms so successfully and for so long without any extraordinary interventions beyond hard work and concerted effort, that person is not likely to be considered disabled under the ADA's definition.  It is understandable that Dr. Wright is distressed and frustrated that he seems to be performing satisfactorily in all other clinical and academic requirements for being a physician other than difficulty passing the Step 3 Exam.  However, the established requirements for becoming a physician include successfully passing the Step 3 exam.  I just don't see any convincing evidence that his difficulty in passing this exam is due to having a disability.

8.  In summary, Dr. Wright's documentation fails to build a convincing case for the existence of ADHD (or RD) and fails to illuminate the early appearing and chronic pattern of real world functional impairment arising from it beyond self-report and having struggles passing Step exams.  His documentation also fails to adequately show that he has a disability within the meaning of the ADA, in my opinion.  The idea that he may perform better on Step 3 when allowed extra time is not unusual and is not the issue.  Most people would.  However, to qualify for a disability under the American's with Disabilities Act, one must have a physical or mental impairment that substantially limits one or more major life activities.  Further, that individual must suffer substantial impairment relative to the Average person in the general population.  Dr. Wright has not shown that he is substantially limited in any major life activity relative to the Average person, in my opinion. The purpose of accommodations is not to optimize test performance, guarantee that one completes a test, or to help one achieve a score that is commensurate with their highest potential.  Because there is insufficient hard evidence and history to support an ADHD (and RD) diagnosis or a disability, I do not believe that granting his requested accommodations is warranted.

Sincerely,

_____

Kevin Murphy, Ph.D.

5