IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02319

JASON WRIGHT,

        Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

        Defendant.

## DECLARATION OF KEVIN MURPHY, PH.D.

1. My name is Kevin Murphy. I am over 18 years of age and, unless otherwise stated, I have personal knowledge of the matters addressed herein in my capacity as an external reviewer for the National Board of Medical Examiners ("NBME").

2. I provided recommendations to NBME regarding a request for testing accommodations on Step 3 of the United States Medical Licensing Examination ("USMLE") submitted by Jason Wright ("Dr. Wright"). A true and correct copy of the April 5, 2021 report I submitted to NBME is attached at **Exhibit 1**.

3. I have over 35 years of experience in the field of psychology, and I specialize in Attention Deficit Hyperactivity Disorder ("ADHD").

4. I am the President of the Adult Attention Deficit/Hyperactivity Disorder (ADHD) Clinic of Central Massachusetts, and I regularly evaluate and treat individuals for ADHD. My area of specialty is adult ADHD. I am also an Associate Professor of Psychiatry at the

154024613.1

University of Massachusetts Medical School. I am a former member of the National Advisory Board of Children and Adults with Attention Deficit Disorder (CHADD) and was elected to the CHADD Hall of Fame in 2001.

5. I have served as an independent, external consultant for various organizations that administer standardized licensing examinations on which individuals sometimes request testing accommodations based upon a diagnosis of ADHD. The organizations for which I have served as an external consultant include the National Board of Medical Examiners, the Educational Commission for Foreign Medical Graduates, and the Boards of Bar Examiners for California, Connecticut, Delaware, Florida, Louisiana, Massachusetts, Missouri, New York, Oklahoma, and Washington, D.C.

6. I have taught and published in the area of ADHD.

7. Additional qualifications may be found on my CV, a copy of which is attached as **Exhibit 2**.

8. In accordance with applicable diagnostic criteria, when assessing whether an adult individual has ADHD, I look for evidence that: (a) the individual had a childhood onset of symptoms (prior to age 12) that resulted in clinically-significant impairment, (b) the symptoms have been chronic and have resulted in pervasive impairment over time and across situations, (c) there was developmental deviance compared to same-aged peers, and (d) the symptoms are not better explained by other factors such as another mental disorder or transient situational stressors.

9. In my opinion, the documentation submitted to NBME on behalf of Dr. Wright does not substantiate an ADHD diagnosis for Dr. Wright, does not demonstrate that he is substantially limited in a major life activity as a result of his claimed ADHD, and therefore does

not support the conclusion that Dr. Wright is disabled within the meaning of the Americans with Disabilities Act (ADA).

10.     Dr. Wright's problems appear to be largely specific to test-taking and not performing as well as he would like on timed standardized tests, particularly the USMLE Step exams. ADHD, however, is more global than difficulty with test-taking or finishing tests. It is a neurodevelopmental disorder with a childhood onset that typically results in a chronic and pervasive pattern of developmentally deviant impairment in academic, social, vocational, and daily adaptive functioning. ADHD seriously disrupts one's functioning over time and across situations in multiple areas of functioning and not just in one fairly circumscribed area, such as test-taking. Indeed, one of the diagnostic criteria for ADHD is that it must meaningfully impact an individual in multiple settings.

11.     The lives of people with ADHD are typically characterized by academic and vocational underachievement, unsatisfactory personal relationships, problems with behavior and self-control, and general difficulty managing the routine tasks of daily life.

12.     Dr. Wright's documentation does not adequately substantiate a history or magnitude of developmentally deviant, pervasive impairment in school, work, social, or daily adaptive domains that is consistent with ADHD. To the contrary, his records show a consistently successful academic and work history, without accommodations.

13.     For example, despite his self-reported longstanding ADHD-like symptoms since early childhood, he was not diagnosed with ADHD until 2011 during medical school, has no history of seeking or using any accommodations over his entire academic/testing history (until he sought accommodations on the Step 3 examination and in one of his graduate school programs),

has no history of 504 Plans or IEP's, was awarded a Diversity Scholarship and a Minority Arts and Sciences Scholarship to attend college, had Composite scores within the Average range on the ACT on two occasions without accommodations, had SAT scores within the Average range on three occasions without accommodations, graduated from Metropolitan State College in Denver without accommodations, had GRE scores within the Average range without accommodations, successfully completed all of his courses in a Master's Program in Public Health with a 4.0 GPA, had MCAT scores in the Low Average range on two occasions without accommodations, passed the Step 1 exam on his first attempt without accommodations, passed the Step 2 CK exam on his second attempt without accommodations, passed the Step 2 CS exam on his first attempt without accommodations, apparently worked successfully as a Research Assistant and Substitute Teacher without any ADHD-like impairment or accommodations, performed very well in his Clerkships and clinical rotations, received a commendation for demonstrating professionalism and self-responsibility, had positive comments from his supervisors including "well prepared", "solid fund of knowledge", "hard working and bright", "exemplary work ethic", "advanced skills in assessment and management", "his histories were thorough and well organized", "meticulously completed assigned tasks", "solid performer in all aspects", "excellent student", "prompt", "one of the highest overall class averages in cardiology", "highly satisfactory level in basic sciences", "continuously praised for his fund of knowledge and clinical and physical exam skills", "mature, serious, and reliable", and "successfully completed his basic science training without remediation earning two Honors grades". He also did not provide any convincing hard evidence of an early childhood onset of ADHD symptoms/impairment or reading impairment and has shown no convincing hard

-4-

154024613.1

evidence of impairment in any other non-academic domains of functioning. This is not the profile of someone struggling with ADHD (or a Reading Disorder) at the magnitude of a clinical diagnosis or a disability within the meaning of the ADA.

14. Not performing as well as one would like or as well as may be expected on timed standardized tests can happen for any number of reasons, is not necessarily a symptom of ADHD, and is not evidence of impaired functioning. For someone who truly suffers from this disorder at the magnitude of a clinical diagnosis and a disability, life is characterized by disrupted interpersonal relationships, underperformance in school and jobs, and generally inadequate adjustment. People with bona fide ADHD struggle to succeed in life and typically leave a paper trail in their wake that is a testament to their longstanding history of developmentally deviant functional impairment. The paper trail may include negative teacher comments relating to poor self-control and poor or inconsistent academic achievement, report cards/transcripts that show inconsistent/variable grades and/or low ratings in effort, citizenship, and behavior, special education records, 504 Plans, negative job performance reviews, treatment/intervention records that reflect efforts to remediate one's problems, and the like. Indeed, ADHD is a seriously impairing disorder that leaves its mark on a wide swath of an individual's life. I have seen no such records here. To the contrary, the records Dr. Wright did provide showed consistently high academic achievement and no documented evidence of impairment in any non-academic domains of functioning (see Exhibit 1 at Section 1) or indeed in any academic domains of functioning other than in connection with a challenging, high-stakes licensing exam. Merely proclaiming to experience ADHD-like symptoms without *documented*

impairment is not sufficient to substantiate a diagnosis, much less a disability as that term is defined in the ADA.

15.  It is necessary to establish an early onset of symptoms/impairment in childhood to receive the ADHD diagnosis as an adult.  ADHD, by definition, starts in childhood and causes developmentally deviant, chronic, and pervasive impairment in multiple domains of functioning; it does not just suddenly arise in medical school.  Again, Dr. Wright provided no documentation or firsthand records to substantiate a childhood onset of ADHD-like symptoms or impairment, only self-report.  Dr. Lucero reported that Dr. Wright had undergone an evaluation during pre-school at age 5 that suggested he had some ADHD-like symptoms such as forgetfulness, constant physical movement, and getting fatigued easily, but no documentation of this evaluation was provided.  Moreover, regardless of whether he exhibited these symptoms or not, he was still functioning within the Average range as reported by the evaluator - and there was no report that he was experiencing any developmentally-deviant impairment relative to same-aged peers. Average functioning is not indicative of a disability.

16.  I carefully reviewed Dr. Lucero's 2017 and 2020 psychoeducational evaluations as part of my review.  In her 2017 report, Dr. Lucero stated that Dr. Wright "struggles with inattention and focus, but these issues have *not* been present since childhood and thus do not meet criteria for a formal ADHD diagnosis." (Emphasis added.)  However, in her 2020 report, she diagnosed him with ADHD, Inattentive Type, Mild, without explaining or discussing why she changed her mind from her 2017 evaluation.

17.  The 2020 ADHD diagnosis was not adequately substantiated with evidence of real-world functional impairment, in my opinion.  It was based on Dr. Wright's self-report,

symptom endorsement on self-administered ADHD rating scales (CAARS and BRIEF-A), and test scores that are not diagnostic of ADHD.

18. With respect to the CAARS and the BRIEF-A rating scales, symptom endorsement on self-administered ADHD rating scales is not sufficient to substantiate an ADHD diagnosis, especially in the absence of any credible or documented real-world functional impairment. Real world evidence is critical in the context of an ADHD diagnosis. Here, there was no convincing hard evidence of any executive functioning impairment in Dr. Wright's real-world functioning. Moreover, Dr. Wright's mother's ratings were in the normal range on both the CAARS and the BRIEF-A and not supportive of an ADHD diagnosis or clinically significant real-world impairment.

19. Dr. Wright took the IVA-2 CPT (Integrated Visual & Auditory 2 Continuous Performance Test), but continuous performance tests have not been shown to be particularly useful in either confirming or disconfirming an ADHD diagnosis due to their high false positive and false negative rates. Moreover, almost all of his scores on the IVA-2 were within the normal range, and Dr. Lucero indicated that his overall performance revealed that his attention, focus, and impulsivity are generally well-managed when he is taking prescribed medication for ADHD. The fact that Dr. Wright had a couple of below-average scores on Auditory Vigilance and Auditory Elasticity during high-demand sections of the CPT (even though his overall Auditory Attention score was within the Average range) does not mean he has ADHD or an attentional impairment.

20. As for the other tests discussed in Dr. Lucero's 2020 report (the WAIS-IV, WIAT-4, Nelson Denny Reading Test (NDRT), RBANS, and the Beery VMI), almost all of Dr.

154024613.1

Wright's test scores on these measures were within the Average range suggesting no neurological dysfunction. His Processing Speed Index scores of 117 (in 2017) and 120 (2020) on the WAIS-IV were in the Above Average to Superior ranges, which is not indicative of slow cognitive processing or a need for extra time. Low average or even below average scores at one snapshot in time on one test or one subtest are not diagnostic of ADHD or of a Reading Disorder and are not evidence of impaired functioning.

21.     The fact that Dr. Wright was prescribed medication (Adderall) in no way substantiates an ADHD diagnosis.

22.     Dr. Wright's test scores reported in Dr. Lucero's evaluations also were not supportive of an impairment in reading, in my opinion. A more complete discussion of my findings in this regard is found in Sections 5-6 of the attached report. Note, however, that I inadvertently referred to the Woodcock Johnson test in Section 6 instead of the WIAT-III.

23.     In the context of reviewing requests for accommodations on standardized tests, as in the context of evaluating claims for long-term workplace disability payments and in various other contexts, it is not essential to personally evaluate an individual. Therefore, I do not need to see a candidate in person to review his or her request for testing accommodations. Given the developmental nature of ADHD and Specific Learning Disorders and the requirement to show chronic and pervasive impairment in real-world domains, an individual's objective, historical record is the best evidence of whether there is impairment. In Dr. Wright's case, the objective record by and large shows average performance, and average performance does not show impairment.

24. As provided for under the ADA, accommodations are not granted on the basis of a diagnostic label. Accommodation requests need to be tied to functional impairment that points to the need for the accommodation. Dr. Wright's documentation did not show developmentally deviant impairment that indicates a need for extra time, extra breaks, or a private room in order to have equal access to tests.

25. Dr. Wright's statement that he has always had to work longer and harder than his peers to succeed is difficult to quantify, and even if true is not evidence of impaired functioning. It is not uncommon for individuals with no impairment to work harder -- or to perceive that they work harder -- than their peers. Some individuals will have to work harder than others to succeed, and some will succeed without working as hard as others. Such differences in work ethic or work requirements are not inherently indicative of whether a person has an impairment.

26. Dr. Wright's documentation also fails to adequately show that he has a disability within the meaning of the ADA, in my opinion. To qualify for a disability under the ADA, one must have a physical or mental impairment that substantially limits one or more major life activities. Further, that individual must suffer substantial limitation relative to the average person (i.e., most people in the general population). Dr. Wright has not shown that he is substantially limited in any major life activity relative to the average person, in my opinion.

27. Dr. Wright's documentation indicated that his parents and teachers did not recognize his need for assistance and he "fell through the cracks" because he was performing only satisfactorily or in the Average range when he was capable of performing much higher. With respect to the ADA, average performance is not considered to be evidence of impaired functioning. In this sense, the "Twice Exceptional" argument put forth by Dr. Lucero and Dr.

Wright is not particularly relevant with respect to the ADA's definition of "disabled," in my opinion.

28. In summary, it is my opinion that Dr. Wright does not meet the diagnostic criteria for ADHD or a reading disability and that he is not disabled within the meaning of the ADA. I therefore do not believe that granting Dr. Wright's requested accommodations is warranted, because he does not need accommodations to take the USMLE Step 3 examination in an accessible manner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 24, 2021.

DocuSigned by:

Kevin Murphy

Kevin Murphy

154024613.1