# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02319

JASON WRIGHT,

    Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

    Defendant.

## PLAINTIFF'S REPLY BRIEF ON EMERGENCY
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Jason Wright, by and through his counsel, Eric Maxfield, submits this Plaintiff's Reply Brief on Emergency Motion for Preliminary Injunction. In support of his Motion, Mr. Wright provides the following Reply.

Mr. Wright commenced a civil action against the Defendant National Board of Medical Examiners (NBME) for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et seq.[1] Mr. Wright is requesting appropriate accommodations when taking the United States Medical Licensing Exam (USMLE) Step 3 test on October 22 and 26, 2021 in Colorado Springs, Colorado, and thereafter in the event that he does not pass the test on that attempt.[2]

---

[1] Mr. Wright also filed his complaint under § 504 of the Rehabilitation Act of 1973 and the Colorado Anti-Discrimination Act. These matters are not before the Court on the Motion for Preliminary Injunction.

[2] Mr. Wright's test dates are October 22 and 26, 2021 in Colorado Springs, Colorado, the date and location having been changed by the administrator.

1

**I. Mr. Wright meets the standard for issuance of a preliminary injunction because he is substantially limited in a major life activity, and without testing accommodations, his injury is imminent and irreparable.**

Title III of the ADA provides, in relevant part, that an entity offering "examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; *Berger v. Nat'l Bd. of Med. Examiners*, 2019 U.S. Dist. LEXIS 145666 \*\*54-55. Mr. Wright must show (1) he is disabled; (2) his requests for accommodation are reasonable; and (3) that those requests were denied. The NBME disputes only that Mr. Wright has a substantial limitation of a major life activity and therefore that he has a disability.

**A. Mr. Wright is likely to succeed on the merits.**

Reading is a major life activity under the ADA. *Jenkins v. Nat'l Bd. of Med. Examiners*, 2009 U.S. App. LEXIS 2660, 2009 WL 331638, at \*2 (6th Cir. Feb. 11, 2009). Specific learning disorders, dyslexia and ADHD are considered impairments under the ADA. 28 C.F.R. §§ 36.105(b)(1)(ii), (2). The evidence shows that Mr. Wright has impairments in reading fluency, processing speed, and attention which substantially limit the major life activity of reading as compared to most people in the general population. Ex. 1:B: pp. 24, 25, 29-31.[3]

In determining whether an individual is substantially limited, the Court must compare an individual to those in the general population rather than "an academic peer group, or, in the case of standardized tests, to other test-takers who are not representative of the general population."

---

[3] Defendants repeated the exhibit numbers used by Plaintiff. Plaintiff's numbering uses a two tier system, with Exhibits 1 and 2, followed by subset numbers or alternatively letters, set out in the exhibit key. Plaintiff will use the letter system with page number references to the page number in the exhibit pdf.

*Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, 2016 U.S. Dist. LEXIS 48181, 2016 WL 1404157, at *6 (E.D. Pa. 2016).

The DOJ heavily favors an individualized assessment or evidence that a "qualified professional has individually and personally evaluated the candidate as opposed to simply considering scores from a review of documents." *Berger*, 2019 U.S. Dist. LEXIS 145666 at 58 citing *Bibber*, 2009 U.S. App. LEXIS 2660, 2016 WL 1404157, at *6. It also states that this need for an individualized evaluation is "particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation" and that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate. . . ." *Id.*

The NBME agrees that it has the obligation to make an independent assessment of Mr. Wright's request for accommodation on the USMLE. Resp. p. 14. However, a paper review of Mr. Wright's own face-to-face assessor Dr. Lucero is inadequate to meet this duty. Moreover, in not crediting Mr. Wright's own assessor Dr. Lucero, the NBME argues that it need not follow DOJ guidance that puts flesh on the bones of the ADA and its regulations. The NBME's argument fails because DOJ guidance emphasizing the pre-eminence of the in-person assessment is consistent with the statute and regulation.

Dr. Lucero's assessments support a conclusion that Mr. Wright is a person with a disability under the ADA. Ex. 1:A,B, pp. 1-32. Dr. Lucero is an experienced clinical psychologist who specializes in the area of disability assessment, and she frequently conducts evaluations of individuals with suspected learning disabilities or ADHD. https://peakgifted2e.com/gifted-2e-specialists/terri-lucero-psychologist-denver/ (site last visited 9/30/2021). In contrast, the NBME relied on Marla Brassard, a psychologist who conducted a purely paper review and reported findings inconsistent with the record. Critically, at page 4 of her report she finds that "On every single

measure of reading administered, he is solidly average, and, in a few instances, above average." Ex. 24 p. 4. This flatly ignores the WAIT-4 test showing Mr. Wright's reading accuracy at 25%, and oral reading fluency at 30%; the Nelson Denny Reading test resulting in a reading rate of 3 percent in comparison with his peers, and in the 12th percentile when under a standard time limit. Under Dr. Brassard's mistaken apprehension, limited by no face-to-face opportunity with Mr. Wright, she believes Mr. Wright has neither a reading disability nor ADHD. Ex. 24 p. 5. Notably, Dr. Brassard believes that there is controversy over whether an individual can be both "gifted" and "learning disabled". Ex. 24 pp. 5-6. This is contrary to the basic premise of the ADA and the specific DOJ guidance acknowledging that one may be successful on testing due to mitigating strengths, and these should not be preeminent in an analysis of whether an individual has a substantial impairment of a major life activity. Ex. 1:B: pp. 30-31; *Berger*, 2019 U.S. Dist. LEXIS 145666 at FN 3.

Indeed, in addition to Dr. Lucero's recognition of his giftedness, Mr. Wright has received positive feedback from his clerkships and clinical rotations, including, "well prepared", "solid fund of knowledge", "hard working and bright", "exemplary work ethic", "advanced skills in assessment and management", and "solid performer in all aspects." Ex. 31 p. 4. Moreover, according to Mr. Wright's Medical School Senior Associate Dean, "those who have trained Mr. Wright believe he will become a **highly qualified** physician." Ex. 5 p. 5. (emphasis in original). The NBME also relies on the opinion of Kevin Murphy, Ph.D., who, like Dr. Brassard conducted only a paper review and likewise found no diagnosis of learning disability or ADHD and no justification for accommodation. Dr. Murphy specializes in ADHD (and not reading or learning disabilities). Ex, 31 p. 1; Ex. 25 p. 5. According to Dr. Murphy, "if someone can compensate for their symptoms so successfully and for so long without any extraordinary interventions beyond hard work and concerted effort, that person is not likely to be considered disabled under the ADA's definition." Ex. 25 p. 5. This is contrary to the requirements of the ADA, which prohibits an assessor from holding prior success against a

participant, whether accomplished through mitigation or other compensation. See, DOJ Guidance on Regulations to Implement ADA Amendments Act of 2008, 81 FR 53204-01, 2016 WL 4210327, at *53237 (2016). "A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent a court from finding a disability in the case of any individual . . . who is extremely bright and hardworking, and who uses alternative routes to achieve academic success," a result that would be inconsistent with the goals of the ADA. *Bartlett v. New York State Bd. of Law Examiners*, 2001 U.S. Dist. LEXIS 11926, 2001 WL 930792, at *37 (S.D.N.Y. 2001). Dr. Murphy also acknowledges, without explanation, that in his written opinion he "inadvertently referred to the Woodcock Johnson test… instead of the WIAT-III. Ex. 31 p. 8. ¶ 22.

Under the ADA regulations, the Court must consider the condition and manner under which the individual performs the major life activity, as well as the duration of time it takes to perform such activity, in determining whether a person has a disability under the ADA:

> "[T]he focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population."

29 C.F.R. § 1630.2(j)(4).

Mr. Wright is limited in reading ability, per Dr. Lucero's assessment and his own declaration, see ¶¶ 2, 5, 6, 8, 10, 11, 13 (early school), 15 (high school), 23 (medical school), 40 (recently). And he did not seek assessment for and in fact hid his reading difficulties, because he "was a child trying to hide from the associated feelings of embarrassment that my now diagnosed SLD, with Impairment in Reading (deficits in reading fluency/rate and reading comprehension) was causing." Id. at ¶ 13.

The NBME highlights that Mr. Wright received no prior accommodations until the University of Denver approved extra time on testing. The full picture is more telling—Mr. Wright received the accommodation, aside from those requested of the NBME, that he requested. In other words, the NBME is the only entity that has denied Mr. Wright's request.

Mr. Wright has met his burden of adducing strong evidence showing that he has impairments in reading fluency, processing speed, and ADHD which substantially limit the major life activity of reading as compared to most people in the general population and is thus "disabled" under the ADA.

**B. Mr. Wright has demonstrated irreparable harm in the absence of injunctive relief**

The NBME argues that because Mr. Wright seeks monetary damages he has no claim of irreparable harm. Resp. p. 18. Mr. Wright cannot continue with his medical career by participating in a residency or obtaining a medical license until he passes the USMLE Step 3 exam. A delay in taking the Step 3 exam pending the resolution of this lawsuit would deprive Mr. Wright of the opportunity to practice his chosen profession of medicine, and "[t]he lost opportunity to engage in one's preferred occupation goes beyond monetary deprivation." *Bonnette v. District of Columbia Court of Appeals,* 796 F. Supp. 2d 164, 186 (D. D.C. 2011). See also *Enyart v. Nat'l Conference of Bar Examiners, Inc.,* 630 F.3d 1153, 1166 (9th Cir. 2011) (affirming finding of irreparable harm based on the plaintiff's inability to practice law without successfully passing bar examination). These factors establish that Mr. Wright would likely suffer irreparable harm in the absence of a preliminary injunction in this case.

The NBME argues that Mr. Wright's claim of irreparable harm is speculative, citing to *Mahmood v. Nat'l Bd. of Med. Examiners*, 2012 U.S. Dist. LEXIS 86837, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012). Unlike *Mahmood*, where the plaintiff had not graduated medical school, Mr. Wright, at great financial cost and personal investment, has completed each step toward medical licensure but for the USMLE Step 3. Decl. 23, 24, 64. He has completed medical school, and participated in a residency, with strong reviews, (he was unable to complete due to that residency terminating his position in the program due to his failure to pass the USMLE Step 3 within a certain time frame). Decl. ¶ 35; Ex. 31 p. 4.

If he does not pass the October, 2021 USMLE Step 3 test Mr. Wright may need an exception

6

from the Colorado Medical Board's timing requirements under its Rule 100. However, the Medical Board does not provide advisory opinions, and a request for an exception would only be appropriate once he has passed the USMLE Step 3 test. There is not now adequate certainty of fact to support an application to the Medical Board for additional time to successfully complete all USMLE tests.

Mr. Wright needs an accommodation on his October, 2021 test and, if he fails to pass that exam, for subsequent attempts. The October 2021 test is not his only or last opportunity. Colorado Medical Board Rule 100 provides that some applicants for licensure will need to take and pass all USMLE tests within a seven-year period and some within a ten-year period. 3 CCR 713-17:100 17.2(D), (D)(1). If Dr. Wright takes and passes the October, 2021 USMLE Step 3 test for which he has registered, he will need to demonstrate to the Medical Board, with his application, that, in order to avoid requesting an exception to the ten-year requirement, he qualifies for that period under Board Rule 100.  He will demonstrate that his graduate level coursework in public health (CU; 2006-2008) and healthcare management/administration (DU; 2019-2020), in addition to his M.D. (RUSM; 2009-2014), qualify him for that ten-year period. Decl. ¶ 21, 35, 55. If Mr. Wright passes the October, 2021 USMLE Step 3 test, and if he demonstrates to the satisfaction of the Medical Board his qualification for the ten-year period, he will not need an exception to the seven-year timing requirement.

Further complicating the possible outcomes here, the Board Rule also provides that an exception to the timing requirements may be granted for good cause. 3 CCR 713-17:100 17.2(D)(2). Mr. Wright is permitted to retake the exam if he fails to pass it. Therefore, if he does not pass the October, 2021 sitting, he will re-register and retake the exam. In that case, Mr. Wright will seek an exception to the timing requirement for successful completion of the USMLE. There is no guarantee that the Board will grant that exception.

Although the timing of testing accommodations is critical to avoiding more irreparable harm, Mr. Wright's claim of imminent and irreparable harm is not simply due to the timing in Medical

7

Board Rule 100. Mr. Wright will be irreparably harmed if he is not accommodated, regardless of the timing, because he has invested enormous time, effort, funds, and study into proceeding with his career as soon as possible. Decl. 23, 24, 64.

**C. The harm to Dr. Wright far outweighs speculative harm to the NBME**

The threatened injury to Mr. Wright outweighs any potential harm to NBME. Without an accommodation for his reading disability and ADHD, Mr. Wright risks failing the USMLE Step 3 test a fourth time, difficulty obtaining a new residency, inability to receive a medical license, and an inability to practice his chosen profession. The provision of justified accommodations assures that the USMLE exam is fairly administered, allowing Mr. Wright to demonstrate his knowledge without penalizing him for the limits to reading speed resulting from his disabilities. Mr. Wright's demonstration of disability and need for accommodation in order to start his medical career, and the irreparable harm that will ensue if he is not accommodated, weigh heavily in favor of an injunction.

**D. An Injunction Would Serve the Public Interest**

The NBME does not dispute that the public interest is clearly served by granting injunctions that eliminate the type of discrimination targeted by the ADA. Resp. p. 19. The NBME points out that they disagree that this interest is applicable here because they dispute that Mr. Wright is disabled and therefore dispute that he is likely to succeed on the merits of his claim. If the Court finds Mr. Wright disabled under the ADA it should find that the public interest is clearly served by granting this injunction. The NBME points out that the public has an interest in the fair administration of tests. Resp. p. 19. However, Mr. Wright is seeking, through accommodation, the fair administration of the USMLE Step 3. He is not seeking to pass by a lower score than others, or by demonstration of less knowledge than others. Requiring Mr. Wright to be accommodated protects him, while requiring Mr. Wright to demonstrate his knowledge on the test protects the public.

WHEREFORE, Mr. Wright requests that his Emergency Motion be granted.

Respectfully Submitted,

*/s/  Eric Maxfield            .*
Eric Maxfield
Eric Maxfield Law, LLC
3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone: (303) 502-7849
eric@ericmaxfieldlaw.com

Date:  September 30, 2021

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), combining this motion and the legal memorandum in support.

9

## CERTIFICATE OF SERVICE

I certify that a true copy of this Plaintiff's Reply Brief On Emergency Motion for Preliminary Injunction was provided to counsel for Defendant National Board of Medical Examiners on this 30th day of September, 2021 by electronic service through the Court's e-filing system and by email to the following address:

Robert Burgoyne, Esq.
Lindsey Erin Dunn, Esq.
Perkins Coie, LLP

RBurgoyne@perkinscoie.com
LDunn@perkinscoie.com

*s/ Eric Maxfield*