**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action: 1-21-cv-02319-DDD-KLM

JASON WRIGHT,

Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

Defendant.

---

**RESPONSE TO NBME'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

Plaintiff Jason Wright, through his counsel, Eric Maxfield, submits this Response to Defendant National Board of Medical Examiners' (NBME) Motion to Dismiss Plaintiff's Second Amended Complaint, which alleges violations of Title III of the Americans with Disabilities Act ("ADA") and the Colorado Anti-Discrimination Act ("CADA"). NBME's Motion to Dismiss should be denied for the following reasons.

**Background**

This case results from Mr. Wright's request for and the NBME's denial of testing accommodations required for Mr. Wright to demonstrate his qualifications to be a physician. Mr. Wright does not seek reduction in the standards used to assess readiness to practice medicine. Rather, he asks only for the opportunity to test on terms that allow him to demonstrate his competency.  NBME is required to provide testing accommodations on the USMLE to individuals

1

with disabilities within the meaning of the ADA, 42 U.S.C. § 12189; see also 28 C.F.R.§§ 36.309(b) & (c) (Department of Justice regulations mandating that private testing entities offer modifications to ensure full and equal access to persons with disabilities).

In 2021, the USMLE changed its testing eligibility rules by reducing the number of attempts allowed on the Steps on the USMLE from six to four. Second Amended Complaint ("SAC") at ¶ 63.  Here, Plaintiff alleges that, in connection with his third and fourth sittings, Defendant "failed to provide . . . Mr. Wright with appropriate testing accommodations on the USMLE Step 3, which includes extended time (50%), distraction free or reduced test setting, and additional break time." SAC at ¶ 6.  Mr. Wright further alleges that, in light of this wrongful denial of accommodations, sittings taken without accommodations do not constitute "attempts" within the meaning of the four-attempt-rule. SAC at ¶ 68. If Mr. Wright succeeds on this point, he will still have either one or two attempts remaining under the rule.  Thus, the legal fulcrum of this case is whether Mr. Wright's third and fourth sittings, where NBME allegedly wrongly denied accommodations in violation of the ADA, constituted attempts within the meaning of the four-attempt-rule.

As the body in charge of administering the USMLE, NBME must field accommodation requests and determine testing eligibility.  Here, NBME took the position that Mr. Wright was not eligible for the accommodations sought on his third and fourth sittings of the Step 3 test.  Based on this conclusion, NBME now views Mr. Wright as having exhausted his attempts, thus rendering him ineligible to retest under the rule. While NBME is entitled to make eligibility decisions, it may not violate the law.  When violations of ADA or CADA are alleged, the applicant is free to seek redress in the courts, as Mr. Wright does here.

In its 11/29/22 Order, based on the First Amended Complaint, this Court expressed concerns over whether Mr. Wright lacked a personal stake in the outcome in light of NBME's finding that he was "currently ineligible to test" due to the four-attempt rule.  Noting that Mr. Wright "may have

2

adequate reasons that the . . .four-test limits can be overcome" (Order at p. 5-6), the Court dismissed without prejudice.

The Plaintiff's Second Amended Complaint includes the following allegation:

> The July, 2021 NBME attempt-limit policy does not bar future test attempts by Mr. Wright because one or two of the times Mr. Wright sat for the USMLE Step 3 test, were not attempts, due to the unlawful denial of reasonable accommodation.  SAC at ¶ 68.

If true, this allegation would eliminate any mootness concerns since, if the Court ordered the NBME to provide the requested accommodations, he would have either one or two remaining attempts under the 2021 four-attempt-rule.  Thus, the controversy is live.

Nonetheless, Defendant seeks dismissal.   Fundamentally, Defendant's argument for dismissal is grounded in its affiant's sworn statement that:

> "Because he has now taken the Step 3 examination four times, Dr. Wright is ineligible to retake the Step 3 examination under standard USMLE eligibility policy." Buono Affidavit at ¶9.

As argued below, acceptance of this claim would constitute error.

**I. Acceptance of the sworn statement that Mr. Wright is "ineligible" to retest would constitute *rejecting*, rather than assuming, the truth of the well-pleaded facts in Mr. Wright's Complaint, contrary to standards applicable under F.R.C.P. 12(b)(1) and (6).**

Defendant argues that, even after Mr. Wright's Second Amended Complaint, no live controversy exists.  Specifically, Defendant argues:

> Wright attempts to wriggle around the four-attempt limit, alleging it does not apply to him because  . . . not all his attempts should count because he was unlawfully denied accommodations. This . . . allegation[] does not create a ripe[1] claim. Wright would need to submit a new application to retake the Step 3 examination, and he is not currently eligible to do so. [citations omitted] Defendant's Motion to Dismiss ("MTD") at 7.

---

[1] Defendant's ripeness reference appears to be based on the theory that Wright cannot submit a new application due to attempt exhaustion.  This non-ripe argument fails when the truth of his allegations is assumed.

This argument rests on the January 23, 2023 Affidavit of Ms. Buono,[2] submitted alongside its

Motion to Dismiss.  Ms. Buono serves as the Director of Program Management and Office of the

USMLE Secretariat, Affidavit at ¶ 1.  In that capacity, it is her role to "support[] the USMLE

program on behalf of" NBME and other program sponsors. Affidavit at ¶ 3.  Ms. Buono's affidavit

avers:

> "Because he has now taken the Step 3 examination four times, Dr.
> Wright is ineligible to retake the Step 3 examination under standard
> USMLE eligibility  policy" Buono Affidavit at #9.

The definition of a tautology provided by the Merriam Webster Dictionary exposes the flaw in

Defendant's logic.  The definition states:

> a statement that is true by virtue of its logical form alone.  A logical
> combination of sentences that is always true, regardless of the truth or
> falsity of the constituent sentences, is known as a "*tautology*."
> https://www.merriam-webster.com/dictionary/tautology (last viewed
> 2/28/23).

Here, Ms. Buono starts by accepting NBME's premise that Mr. Wright "has now taken the Step 3

examination four times." Based on this premise, she avers that "Dr. Wright is ineligible to retake

the Step 3 examination under standard USMLE eligibility policy."  Of course, by definition, the

four-attempt-limit was created to apply to precisely the situation where an applicant has taken the

test four times.

    In its Motion, Defendant concedes that:

> "When deciding a motion to dismiss under Rule 12(b)(6), the court
> must assume the truth of all well-pleaded facts in the complaint and
> draw all reasonable inferences therefrom in the light most favorable to
> the plaintiff."  MTD at p. 5.

---

[2] In the context of Defendant's F.R.C.P. 12 motion, and prior to discovery (currently stayed on Defendant's Motion), Defendant relies on Buono's affidavit. This affidavit should be struck in light of the discovery stay, it has no place in support of a F.R.C.P. 12 motion; Defendant's motion should not be converted into a summary judgment motion in light of the discovery stay.

Defendant's insistence that this Court accept Ms. Buono's sworn "factual" statement that Mr. Wright is "ineligible" to test again [a statement that relies on wholesale acceptance of Defendant's underlying legal decision that Mr. Wright was not entitled to accommodations] violates the standards that apply on a Motion to Dismiss.

Here, Mr. Wright's Second Amended Complaint alleges:

> The July, 2021 NBME attempt-limit policy does not bar future test attempts by Mr. Wright because one or two of the times Mr. Wright sat for the USMLE Step 3 test, were not attempts, due to the unlawful denial of reasonable accommodation. Complaint at ¶ 68.

Thus, Ms. Buono's ultimate conclusion regarding Mr. Wright's ineligibility is a "fact," if, and only if Mr. Wright's allegations (i.e.: that his third and fourth sittings for the Step 3 do not constitute "attempts") are rejected and NBME's decision to deny his accommodation requests are presumed lawful. In the context of a Motion to Dismiss, it is the Court's duty to do the opposite. Defendant may not hide behind Ms. Buono's credentials to short circuit the legal process to which Mr. Wright is entitled.

**II. Under the guise of challenging this courts subject matter jurisdiction, Defendant's arguments would strip this Court of the ability to provide a remedy for similarly situated applicants illegally denied testing accommodations.**

Central to Defendant's Motion to Dismiss the Second Amended Complaint is the argument that Mr. Wright's claims are moot since "[b]ecause he has now taken the Step 3 examination four times[3], Dr. Wright is ineligible to retake the Step 3 examination under standard USMLE eligibility policy." Buono Affidavit at ¶9. Specifically, Defendant 's Motion to Dismiss argues that:

---

[3] Despite the apparent simplicity of the statement, couching Mr. Wright's supposed "ineligibility" as a "fact" to which this court must defer shields from review NBME's underlying legal decision to deny testing accommodations. The question of when a test administration is so compromised as to bar calling it an attempt within the meaning of the rule is inherently a legal question. *Cunningham v. Univ. of N.M. Bd. of Regents*, 779 F. Supp. 2d 1273 (D.N.M. 2011). (Courts are "not bound to accept as true a legal conclusion couched as a factual allegation.").

>Only preventive relief is available to individuals under Title III of the
>ADA, as Dr. Wright acknowledges. MTD at p. 7-8.

Critically, Mr. Wright's claim centers around the denial of his requests for accommodation.

Defendant's theory of the case would render these decisions permanently unreviewable as follows:

1) Defendant, in its role as the testing administrator, denies a request for accommodations made under the ADA.

2) Defendant then interprets sittings made without accommodations (due to its allegedly unlawful denial of the request), as "attempts" within the meaning of the 2021 four-attempt-rule.

3) When applicants deemed by NBME as having four attempts seek judicial review, NBME moves to dismiss those claims as moot, arguing that the case is no more than "repackaged attempts to challenge NBME's prior accommodation decisions" and thus "not a claim for forward-looking preventative relief related to a future testing accommodation" since NBME, in its unreviewable discretion, has determined the candidate ineligible to retest.

This distortion of the review process applying to accommodation denials is highlighted again when Defendant continues as follows:

>"At bottom, Wright improperly conflates NBME's standard eligibility
>criteria with the testing accommodation issue that is the actual subject
>of his ADA claim."[4] (MTD at p. 7-8)

Defendant would excise questions regarding NBME's denial of accommodations on Mr. Wright's third and fourth sittings (or indeed, of anyone who, in NBME's unreviewable determination, is ineligible under the four-attempt-rule) as "prior" claims to be siloed away from the "current claim" regarding the four-attempt-rule.

---

[4] Defendant also claims: "Given Wright's current ineligibility and the uncertainty over whether he will be able to test again in the future—as reflected in his own amended allegations—Wright's request for injunctive and declaratory relief regarding his entitlement to testing accommodations on a future Step 3 examination remains speculative and contingent and thus not ripe."  Of course, if Mr. Wright prevails on his claims that his 3rd and 4th sittings for the test cannot be counted as "attempts" due to the wrongful denial of accommodations, there will be no uncertainty, he will be entitled to test again with accommodations. Relying again on circular arguments, Defendant finds uncertainty as to who will ultimately win this case creates the "speculativeness" that would deny jurisdiction to this Court.  This theory must be rejected.

In Defendant's view, once Ms. Buono's simple claim [i.e.: that Mr. Wright is "ineligibile" to retest] is uncritically accepted as true, Mr. Wright has "failed to satisfy [a] lawful, nondiscriminatory requirement," [i.e: the four test rule] and thus, "lacks standing to raise claims of discrimination in the denial of the benefit" [i.e.: the right to take the test again.] *Wilson,*[5] cited by Defendant, however, cannot be stretched to support NBME's attempt to evade judicial review of the lawfulness of its denial of Mr. Wright's requests for testing accommodations. Thus, here, this Court has the jurisdiction, and indeed the duty, to address Mr. Wright's claims.

Mr. Wright's allegations are sufficient to state a retaliation claim under Rule 12(b)(6).

Contrary to Defendant's argument, Mr. Wright's Complaint is sufficient to state a retaliation claim. As Defendant notes, there are three elements to a *prima facie* case for retaliation under Title III[6] of the ADA:

> "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable [person] would have found the challenged action materially adverse[7], and (3) that a causal connection existed between the protected activity and the materially adverse action.' MTD at p. 9. (citations omitted).

---

[5] In *Wilson v. Glenwood Intermountain Properties, Inc.*, after finding that it was proper for a landlord to rent exclusively to BYU students, the court declined to review the plaintiffs' gender discrimination claim, because, even if plaintiffs prevailed on the discrimination claim, as non-BYU students, they would not qualify for the housing anyway. *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 593-594 (10th Cir. 1996). Here, unlike in *Wilson*, the Second Amended Complaint presents a ripe and live controversy.

[6] Defendant's claim that the retaliation claim is not properly raised under Title III of the ADA, MTD at p. 9, misstates the law. See *Contee v. Univ. of Pa.* (E.D. Penn. 2021 U.S. Dist. LEXIS 120662). "Title IV of the ADA prohibits retaliation against anyone for asserting rights under the ADA and makes it unlawful to coerce, intimidate, threaten, or interfere with anyone exercising his or her rights under the statute. 42 U.S.C. § 12203(a)-(b). The remedies available for a retaliation claim depend on the context. 42 U.S.C. § 12203(c). "[A] . . . plaintiff bringing a retaliation claim involving public accommodations will have the remedies of Title III of the ADA, incorporating the remedies of Title II of the Civil Rights Act." (citations omitted).

[7] Here, Defendant assumes, "solely for this motion that the four-attempt limit is a "materially adverse action[.]" MTD at p. 9.

On the element of causation, "[a] plaintiff can establish the requisite causal connection either "directly or circumstantially." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). "A causal connection can be demonstrated circumstantially through evidence that justifies an inference of retaliatory motive, such as a 'very close' temporal proximity between the protected activity and adverse employment action." *Id.*

On the issue of causation, the Second Amended Complaint alleges that Mr. Wright's 2018 request for reasonable accommodation on the USMLE Step 3 was denied in 2019. Complaint at ¶ 57-59. It further alleged that, subsequently:

> 61. Mr. Wright, through counsel, on March 29, 2021, requested testing accommodations on the USMLE Step 3. . . .
>
> 62. The NBME denied th[is] . . . request . . .on June 28, 2021.
>
> 63. On July 1, 2021, the NBME posted to its web site a new policy limiting applicants to 4 attempts at each USMLE Step [the posted is quoted here]. Complaint at ¶¶ 61-63.
> .  .
> The July, 2021 NBME attempt-limit policy is retaliatory against Mr. Wright for assertion of his civil rights under the ADA and CADA, and for opposing the NBME's denial of reasonable accommodation. Complaint at ¶ 67.

These allegations are sufficient to state a claim for retaliation. See *John Roe #2 v. Ogden* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."); *Stratton v. United Launch Alliance, L.L.C.*, No. 13-1756, 2014 U.S. Dist. LEXIS 99362 *11 (D. Colo. 2014) (citations omitted) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

By its nature, evidence of the motives behind Defendant's decision to change its policy are likely to be found within Defendant's possession. But even without smoking gun evidence of a retaliatory motive, the underlying facts and timing of the change could properly give rise to an inference of retaliation.  Here, the temporal proximity of Defendant's June 28, 2021 denial of Mr. Wright's second request for accommodations, and notice of the change to the four-attempt-rule posted on July 1, 2021, just three days later, justifies an inference of retaliatory motive.  Thus, Mr. Wright has pled sufficient facts to defeat dismissal of his retaliation claim.

Rather than attempt to address the claims as pled, Defendant mischaracterizes the allegations. After labeling Mr. Wright's retaliation claims "conclusory," Defendant states:

> To the contrary, Wright's allegations reflect that the USMLE Composite Committee "voted to change the number of allowed attempts to protect the integrity of the exam and to more closely match the USMLE attempt limits imposed by the majority of state medical boards." Id. ¶ MTD at p. 9 (emphasis added).

Contrary to the plain meaning of his allegations, this quote appears to indicate that Mr. Wright himself pled that NBME's reasons, stated in its July 1 post, were the *actual* reasons behind the change. Trading on this ambiguity, Defendant then argues:

> Wright has not, and cannot, allege a causal connection between the alleged protected activity and any alleged materially adverse action by NBME; therefore, he has failed to state a claim for retaliation under the ADA. Motion to Dismiss at p. 9.

Of course, it could pose a hurdle to Plaintiff's retaliation claim if he had admitted that protection of exam integrity and closer alignment with state Medical Boards was the *actual* reason for the adoption of the 2021 four-attempt-rule. But Mr. Wright made no such admission. Defendant cites Paragraph 63 for its claim that Mr. Wright admitted that NBME's motives were non-retaliatory. MTD at p. 9. But Paragraph 63 does not even address the actual reasons behind the adoption of the

four-attempt-rule.  Rather, it only quotes the reasons provided by NBME to justify the rule, which, in light of Paragraph 67, Mr. Wright explicitly rejects as pretextual.  Therefore, the Second Amended Complaint is sufficient to state a claim under Rule 12(b)(6).

**III. The NBME is a "public accommodation" under the Colorado Anti Discrimination Act.**

The NBME falls within the definition of public accommodation under the plain reading of CADA. Even if the court views the language as ambiguous, the remedial purpose of the act demonstrates that the intent is to cover entities like the NBME. *303 Creative LLC v. Elenis*, 385 F. Supp. 3d 1147 (D. Colo. 2019) (Subsection (2) is supported by a compelling state interest in discouraging discrimination against protected groups.). Affirmed by *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1178 (10th Cir. 2021), *cert* granted at 2022 U.S. LEXIS 840.

Contrary to the NBME's assertion, § 24-34-601(1) does not define "place of public accommodation". Rather, it provides examples of public accommodations, in non-exclusive list format, by using words such as "including but not limited to", "an educational institution".  Under any fair reading of the statute, the NBME is an educational institution, as it tests knowledge for professional licensure. Further, the NBME's focus on "place" is misplaced. NBME controls and contracts for the administration of the USMLE Step 3 in Colorado, and it determines whether Mr. Wright will be accommodated there.

Moreover, section 24-34-301(5.1), C.R.S., the definition section of the CADA, provides: "Place of public accommodation" or "public accommodation" has the same meaning as set forth in Title III of the federal "Americans with Disabilities Act of 1990", 42 U.S.C. sec. 12181(7), and its related amendments and implementing regulations. Subsection (j) includes: "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." Title III of the ADA, which is enforced by the U.S. Department of Justice, states in

pertinent part, "It is discriminatory to fail to make reasonable modifications to policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. §12182(b)(2)(A)(ii). Department of Justice regulations mandate that a private testing entity modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion. 28 C.F.R. §§ 36.309(b) & (c). This is broad enough to cover the NBME both under the ADA, and CADA. The subsection of Title III describing prohibited disability discrimination explicitly includes examinations related to licensing at 42 U.S.C. § 12189, and, contrary to the NBME's position, it is simply a subset of public accommodations. For these reasons, the NBME is a public accommodation under CADA.

### IV. Mr. Wright is not required to exhaust administrative remedies under the CADA.

CADA's plain language permits pursuing relief in court without filing an administrative complaint. NBME cites § 24-34-306(14), C.R.S. for the point that those filing under parts 4 to 7 must first exhaust administrative remedies, MTD at p. 12.

However, Mr. Wright is also filing under part 8 of the CADA. Moreover, this general requirement is subject to modification by a more specific requirement. *Washington Water Power Co. v. FERC*, 775 F.2d 305, 323 (1985) ("a special act prevails in effect over more general acts"), and see *B.G.'s, Inc. v. Gross*, 23 P.3d 691, 696 (Colo. 2001) (when statutes dealing with the same subject cannot be reconciled, a more specific statute prevails as an exception to a general one). Cf., *Brooke v. Restaurant Services, Inc.,* 906 P.2d 66, 70 (Colo. 1995), (*Not* involving the application of the CADA's section 8).

Section 24-34-601, C.R.S. is to be read in conjunction with section 24-34-802(2), C.R.S., which provides:

> (a) An individual with a disability, … who is subject to a violation of… 24-34-601, or 24-34-803 based on the individual's disability may bring a civil suit in a court of competent jurisdiction… .

Sections 6 and 8 of CADA are more specific than the general provision of section 3. Moreover, nowhere in this specific statute does it state that an administrative complaint is a prerequisite to file in court.

In contrast, the CADA's employment section provides: "Any charge alleging a violation of this part 4 shall be filed with the commission pursuant to section 24-34-306 after the alleged discriminatory or unfair employment practice occurred, and if not so filed, it shall be barred." § 24-34-403, C.R.S. Such language is specific and mandatory, and in the CADA employment section 4 there is no exception. The General Assembly knew how to write exceptions into CADA and crafted them for both the housing and public accommodation sections. See § 24-34-505.6, C.R.S.

Meanwhile, the public accommodation corollary to the employment filing deadline provides: "Any charge filed with the commission alleging a violation of this part 6 shall be filed pursuant to section 24-34-306 within sixty days after the alleged discriminatory act occurred, and if not so filed, it shall be barred." § 24-34-604, C.R.S. Note the difference: for the employment section 24-34-403, cited above, "*any* charge alleging a violation of this part 4 shall be filed with the commission." (emphasis added). But under the public accommodation statute it provides that a complaint with the Commission shall be filed within sixty days. This is distinct from the employment provisions mandating that *any* charge alleging a violation shall be filed with the Commission. When read in conjunction with the specific provision in § 24-34-802(2), C.R.S., it is plain that no exhaustion of administrative remedies is required.

Alternatively, even if Mr. Wright is required to exhaust administrative remedies under CADA, he should be permitted to do so and this case should not be dismissed with prejudice.

WHEREFORE, for the foregoing reasons Mr. Wright prays that this Honorable Court deny the NBME's Motion to Dismiss in all respects. In the event that the Court deems that it could grant Defendant NBME's Motion to Dismiss as to the ADA claim, Mr. Wright prays that this Court allow Plaintiff to file an amended complaint within thirty days from the date of the Court's Order to cure pleading deficiencies. If this Court dismisses the CADA claim, it should do so without prejudice.

Respectfully Submitted,


*/s/  Eric Maxfield              .*
ERIC MAXFIELD, Colo. #29485
Eric Maxfield Law, LLC
3223 Arapahoe Ave., Suite 300
Boulder, CO 80303
Phone: (303) 502-7849
eric@ericmaxfieldlaw.com
Attorney for Plaintiff Jason Wright


I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Eric Maxfield      *

Date:  February 28, 2023

## CERTIFICATE OF SERVICE

I certify that a true copy of this Response to NBME's Motion to Dismiss Second Amended

Complaint was provided to counsel for Defendant National Board of Medical Examiners on this

28th day of February, 2023 by the Court's electronic filing system to the following:

Lindsey Dunn, Esq.
Perkins Coie, LLP

<em>/s/ Eric Maxfield</em>